# EXHIBIT A

Case 8:21-cv-00008-VMC-AAS   Document 1-2   Filed 01/04/21   Page 2 of 71 PageID 8

## IN THE COUNTY COURT OF THE SIXTH JUDICIAL CIRCUIT
## IN AND FOR PINELLAS COUNTY, FLORIDA

CARRIER CORPORATION,

      Plaintiff,

v.

TECHNOLOGY RESEARCH, LLC F/K/A
TECHNOLOGY RESEARCH CORPORATION,

      Defendant.

CIVIL ACTION NUMBER:

_____

### COMPLAINT

**COMES NOW**, CARRIER CORPORATION ("Carrier"), Plaintiff, in the above-styled Civil Action, and files this its Complaint against Defendant Technology Research, LLC, f/k/a Technology Research Corporation ("TRC"), showing this Court the following:

### JURISDICTION AND VENUE

1.  TRC is a Florida limited liability company. TRC's principal place of business is located at 4525 140th Avenue North, Suite 900, Clearwater, Florida 33762. TRC can be served by delivering a copy of the Summons and Complaint to its registered agent for service of process, NRAI Services, Inc., 1200 South Pine Island Road, Plantation, Florida 33324.

2.  This Court has jurisdiction over TRC as it is a resident of Florida and its principal place of business is located at 4525 140th Avenue North, Suite 900, Clearwater, Florida 33762.

3.  TRC's principal place of business is within Pinellas County, Florida, and, thus, venue is proper in this county.

## FACTUAL BACKGROUND

4.      On or about February 2, 2014, a fire occurred in Toccoa, Georgia resulting in a personal injury lawsuit by Courtney Patton against Carrier, (the "Patton lawsuit"). (See <u>Courtney Patton v. Carrier Corporation, et al</u>. Stephens County, Georgia; SUCV2014000329).

5.      On March 27, 2015, Carrier tendered its defense of the Patton lawsuit to TRC and demanded indemnification notifying TRC that the Plaintiff's theory of recovery was based upon an alleged defect in TRC's LCDI plug and cord assembly that was incorporated into Carrier's PTAC/air conditioner. (See Ex. 1).

6.      Carrier's March 27, 2015 correspondence also referenced and attached the indemnification provision within the Terms and Conditions of Purchase applicable to all shipments of LCDI plug and cord assemblies supplied by TRC to Carrier. (See Ex. 1).

7.      TRC's indemnification provision states:

 "Seller [TRC] covenants and agrees at all times to protect, defend, hold harmless and indemnify Buyer [Carrier Mexico], its parent and affiliated companies [e.g., Carrier Corporation] and their respective directors, officers, employees, successors and assigns from and against any and all losses, costs and expenses, and from and against any and all claims for loss, damage or injury and from and against any suits, actions, or legal proceedings of any kind brought against Buyer, or such other parties by or on account of any person, persons, entities, or on account of any injuries received or sustained by any person, persons, entities, or on account of any injuries sustained in any manner (however, arising, including without limitation by reason of negligence, breach of warranty, defect in design, material or workmanship or otherwise, and even though strict liability be claimed), directly or indirectly caused by, incident to, or growing out of breach of this order, defects in the design, manufacture, or materials used in the goods, negligence in the manufacture or provision of the goods supplied, or performance of the services hereunder. Seller further agrees to take upon itself the settlement of all such claims and the defense of any suit, suits, or legal proceedings of any kind brought to enforce such claim or claims, and to pay all judgments entered in such suit, suits or legal proceedings, and all costs of attorneys' fees or other expenses…..Seller's covenants of indemnity herein shall constitute full force and effect notwithstanding the termination or expiration of this order." (the "Indemnification Provision")

8.      The Terms and Conditions of Purchase expressly stipulate that the entire agreement "shall be construed and enforced according to the laws of the State of New York, excluding its 'Choice of Law' or 'Conflict of Laws' rules." (See Terms and Conditions attached to Exhibit "1", ¶23).

9.      On April 17, 2015, TRC rejected Carrier's tender of defense and demand for indemnification. (See as Exhibit "2").

10.     Carrier settled the Patton lawsuit, making its first settlement payment on November 20, 2015.[1]

11.     Due to TRC's improper rejection of Carrier's tender of defense and demand for indemnification, Carrier seeks indemnification and reimbursement from TRC for the cost of that lawsuit, including attorney's fees and settlement monies it paid.

### CONTRACTUAL INDEMNITY CLAIM

12.     Carrier incorporates Paragraphs 1-12 of its Complaint as if fully reasserted herein.

13.     The Contract is to be interpreted under the laws of New York. (See Terms and Conditions attached to Exhibit "1", ¶23).

14.     Under New York law, the duty to indemnify "arises out of a contract which may be express or may be implied in law 'to prevent a result which is regarded as unjust or unsatisfactory.'" Fox v. Cty. of Nassau, 183 A.D.2d 746, 747, 583 N.Y.S.2d 482, 483 (1992).

15.     Pursuant to the Indemnification Provision, TRC agreed to indemnify Carrier for: "any and all claims for loss, damage or injury and from and against any suits, actions, or legal proceeding of any kind brought against Buyer, or such other parties by or on account of any person, persons, or entities or on account of any injuries received or sustained by an person, persons, or entities in any manner….directly or indirectly caused by, incident to, or growing out of breach of this order, defects in the design, manufacture, or materials used in the goods, negligence in the manufacture or provision of the goods supplied, or performance of the services hereunder." (See Terms and Conditions attached to Exhibit "1", ¶9).

16.     TRC agreed to protect and indemnify Carrier "from and against any and all losses, costs and expenses" directly or indirectly caused by, incident to, or growing out of breach, defects in design, manufacture, negligence in the manufacture or provision of the goods supplied. (See Terms and Conditions attached to Exhibit "1", ¶9).

---

[1] Due to the confidential nature of the settlement agreement it is not attached hereto, but will be made available to the Court.

17.     Carrier's settlement and attorneys fees incurred in the Patton lawsuit were paid to resolve claims directly or indirectly caused by defects in the design, manufacture, or materials used in the goods, negligence in the manufacture or provision of TRC's LCDI plug and cord assembly sold to Carrier.

18.     Despite demand, TRC failed to defend and indemnify Carrier in the Patton lawsuit in breach of TRC's obligations under the Indemnification Provision and such breach has resulted in damages to Carrier.

19.     Carrier is entitled to recover from TRC the amounts paid in settlement with Ms. Patton, plus interest at the legal rate from the date of payment, together with all costs of defense, including but not limited to associated attorney's fees and costs.

## COMMON LAW INDEMNITY CLAIM

20.     Carrier incorporates Paragraphs 1-20 of its Complaint as if fully reasserted herein.

21.     As the designer, manufacturer, and supplier to Carrier of the LCDI cord and plug assemblies incorporated into Carrier's PTAC units/air conditioners, TRC owed a duty to exercise reasonable care to design, test, manufacture, inspect, market, sell and provide adequate warnings concerning the LCDI products, so as to make them free of unreasonable risk of harm.

22.     Carrier's liability and settlement in the Patton lawsuit was due to TRC's negligence in designing, testing, manufacturing, inspecting, marketing, selling and failing to provide adequate warnings concerning the LCDI plug and cord assemblies and TRC's later breach of its indemnity agreement with Carrier. Carrier's cost to defend the Patton lawsuit and settlement payment to resolve the Patton lawsuit was proximately caused by TRC's defective LCDI plug and cord assembly as alleged above and TRC's failure to warn of such defects. Consequently, Carrier was compelled to pay damages in the Patton lawsuit because of the negligence imputed to it as the result of a tort committed by TRC.

23.     Accordingly, Carrier is entitled to be indemnified for and recover against TRC all costs incurred, including costs of defense and attorney's fees as well as payments in settlement of the claims in the Patton lawsuit under Georgia law. See Nguyen v. Lumbermens Mut. Cas. Co., 261 Ga. App. 553 (2003) (holding indemnification "may arise by operation of law, independently of contract" if a person "is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another."); (see also

- 4 -

<u>Independent Mfg. Co., Inc. v. Automotive Products, Inc.</u>, 141 Ga. App. 518 (1977) (holding that a defendant manufacturer could maintain third-party complaint against component manufacturer for common-law indemnity).

**WHEREFORE**, Carrier prays this Court grant the relief requested, a TRIAL BY JURY, and such other relief this Court deems just and proper.

Respectfully submitted this 20th day of November, 2020.

> HALL BOOTH SMITH, P.C.
> 2202 North Westshore Boulevard-Suite 200
> Tampa, Florida 33607
> Tel: 813-329-3880
>
> By: ___*/s/ R. Ryan Rivas*___
> R. RYAN RIVAS
> F.B.N. 96700
> RRivas@hallboothsmith.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Florida Courts E-Filing Portal and a copy served along with the Summons and Complaint.



## Swift Currie
ATTORNEYS AT LAW

M. Diane Owens
404-888-6158
diane.owens@swiftcurrie.com

S. DeAnn Bomar
404-888-6164
deann.bomar@swiftcurrie.com@swiftcurrie.com

The Peachtree | 1355 Peachtree Street, NE | Suite 300 | Atlanta, GA 30309 | 404.874.8800 | Fax: 404.888.6199 | www.swiftcurrie.com

March 27, 2015

<u>VIA CERTIFIED MAIL</u>

Technology Research LLC
f/k/a Technology Research Corporation
ATTN: General Counsel
4525 140th Ave. North
Suite 900
Clearwater, Florida 33762

Technology Research LLC
f/k/a Technology Research Corporation
c/o Registered Agent
GY Corporate Services, Inc.
600 Brickell Avenue
Suite 3500
Miami, Florida 33131

Technology Research LLC
f/k/a Technology Research Corporation
c/o Registered Agent
NRAI Services, Inc.
1200 South Pine Island Rd.
Plantation, Florida 33324

Re:   *Courtney Desiree Patton  v. Michont, Inc., d/b/a Toccoa Inn & Suites;*
      *Mingledorff's Inc.; and Carrier Corporation*
      C. A. File No. 14-SU-CV-329cc, Superior Court of Stephens County

### <u>TENDER OF DEFENSE AND DEMAND FOR INDEMNIFICATION</u>

Dear Sir/Madam:

   Carrier Corporation has been sued in the above-captioned civil action pending in Stephens County, Georgia.  This action arises out of a fire that occurred on February 2, 2014 in Room 203 of the Toccoa Inn & Suites, in Toccoa, Georgia.  Plaintiff Courtney Patton was staying as a guest in Room 203 when the fire occurred, and allegedly sustained significant physical injuries as a result.  In her lawsuit, Plaintiff alleges the fire

started as a result of a defect in the packaged terminal air conditioner ("PTAC") in Room 203. Plaintiff further alleges that Carrier Corporation, as the manufacturer of the subject PTAC unit, is liable to her in damages, based on theories of negligence and strict liability. A copy of the Complaint is attached.

After the subject fire occurred, but before suit was filed, the PTAC unit was lost or destroyed. Therefore, Carrier never had the opportunity to examine and inspect the unit. However, representatives of the Toccoa Inn & Suites did have the opportunity to examine and photograph the unit, including the power cord connecting the PTAC unit to the wall electrical outlet. Carrier has been able to identify through these photographs, that the PTAC unit was a Carrier Model 52C unit, which incorporated an LCDI cord manufactured and supplied by Technology Research Corporation ("TRC"). Photographs of the subject power cord and plug are attached.

Between 2004 and 2008, TRC and Carrier Mexico were under a purchase agreement whereby TRC agreed to supply, and Carrier Mexico agreed to purchase, LCDI cords for use in Carrier PTAC units. The Terms and Conditions of Purchase with respect to the LCDI cords supplied by TRC include an indemnification provision whereby:

> Seller [TRC] covenants and agrees at all times to protect, defend, hold harmless and indemnify Buyer [Carrier Mexico], its parent and affiliated companies [e.g., Carrier Corporation], and their respective directors, officers, employees, successors and assigns from and against any and all losses, costs and expenses, and from and against any and all claims for loss, damage or injury and from and against any suits, actions, or legal proceedings of any kind brought against Buyer, or such other parties by or on account of any person, persons, entities, or on account of any injuries received or sustained by any person, persons, or entities in any manner (howsoever arising, including without limitation, by reason of negligence, breach of warranty, defect in design, material or workmanship or otherwise, and even though strict liability be claimed), directly or indirectly caused by, incident to, or growing out of breach of this order, defects in the design, manufacture, or materials used in the goods, negligence in the manufacture or provision of the goods supplied, or performance of the services hereunder. Seller further agrees to take upon itself the settlement of all such claims and the defense of any suit, suits, or legal proceedings of any kind brought to enforce such claim or claims, and to pay all judgments entered in such suit, suits or legal proceedings, and all costs of attorneys' fees or other expenses. . . . Seller's covenants of indemnity herein shall continue in full force and effect notwithstanding the termination or expiration of this order.

Swift, Currie, McGhee & Hiers, LLP
Page 3

A copy of the applicable Terms and Conditions of Purchase are attached.

A fire cause and origin expert retained on behalf of Toccoa Inn & Suites, Loren Griswold, has attributed the cause of the fire to resistance heating where the PTAC unit cord plug was inserted into the wall outlet (see attached report). Carrier does not concede any allegation as to the existence of a defect in the subject PTAC unit, and Carrier denies liability in this case with respect to each and every theory asserted by Plaintiff. However, based upon the opinions rendered by Loren Griswold as to the cause and origin of the fire, and based upon discovery requests by Plaintiff to Carrier, which are specifically focused on the LCDI power cord, including seeking information of all prior complaints/incidents involving the cord, all communications with the CPSC concerning the cord, all of the power cord compliance documents, installation and repair manuals, engineering documents, testing data, studies, etc., it is evident that the Plaintiff's theory of recovery in this case is necessarily based on an alleged defect in the LCDI cord that was attached to the subject PTAC unit.   TRC is therefore required to defend and indemnify Carrier in this action, and Carrier hereby tenders its defense of this lawsuit to TRC, and demands the defense and indemnification provided for in the Terms and Conditions cited above.

As litigation remains ongoing and Carrier has incurred, and continues to incur, significant legal expenses, time is of the essence.  As such, Carrier requests that TRC accept this tender on or before April 6, 2015.  Should TRC fail to do so, Carrier reserves all rights to pursue TRC for all remedies allowable under applicable law.

Sincerely,

SWIFT, CURRIE, McGHEE & HIERS, LLP

M. Diane Owens

S. DeAnn Bomar

MDO:SDB:tfl
Enclosures
cc:  David N. Allen, Esq.

2936895v.1

# IN THE SUPERIOR COURT OF STEPHENS COUNTY

## STATE OF GEORGIA

COURTNEY DESIREE PATTON,

    Plaintiff,

    vs.

MICHONT, INC., d/b/a TOCCOA INN
& SUITES; NARAN GOVAN
KESLIKER individually;
MINGLEDORFF'S INC; and
CARRIER CORPORATION,

    Defendants.

CIVIL ACTION
FILE NO.: 14-SU-CV-329CC

JURY TRIAL DEMANDED

**COPY**

---

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff Courtney Patton and shows the Court the following:

### THE PARTIES, JURISDICTION AND VENUE

1.

Plaintiff Courtney Patton is a resident of the State of Georgia.

2.

Defendant NARAN GOVAN KESLIKER is a resident of Toccoa, Stephens County, Georgia, with a last known address of 350 Stephen Circle, Stephens

County, Toccoa, Georgia 30577, where he may be served with legal process. Defendant NARAN GOVAN KESLIKER is subject to the jurisdiction and venue of this Court because he is a resident of Stephens County, Georgia.

3.

Defendant Michont, Inc., d/b/a Toccoa Inn & Suites is a Georgia corporation with its principal business address at 106 Stephen Circle, Stephens County, Toccoa, Georgia 30577 and process may be served on its registered agent for service of process in Stephens County, Georgia, by serving its registered agent, NARAN GOVAN KESLIKER, at 350 Stephen Circle, Stephens County, Toccoa, Georgia 30577. Defendant Michont, Inc., d/b/a Toccoa Inn & Suites regularly transacts business in Stephens County, Georgia and is subject to the jurisdiction of this Court because this Defendant is a Georgia corporation.

4.

Defendant Mingledorff's, Inc. is a Georgia corporation with its principal business address at 6675 Jones Mill Court, Gwinnett County, Norcross, Georgia 30092 and process may be served on its registered agent for service of process in Gwinnett County, Georgia, by serving its registered agent, Matthew Ranstead, at 6675 Jones Mill Court, Gwinnett County, Norcross, Georgia 30092. Defendant Mingledorff's, Inc. transacts business in this state and sells its products throughout

Georgia including Stephens County, Georgia and is subject to the jurisdiction of this Court because this Defendant is a Georgia corporation.

5.

Defendant Carrier Corporation ("Carrier") is a foreign corporation located at One Carrier Place, Farmington, Connecticut, 06032, and process may be served on its registered agent CT Corporation System at 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

6.

Although headquartered in Connecticut, Defendant Carrier Corporation is subject to the jurisdiction of this Court because it transacts business and has sufficient minimum contacts within the State of Georgia.

7.

Venue is proper in this Court because Defendant NARAN GOVAN KESLIKER is a resident of Stephens County, Georgia; Defendant Michont, Inc., d/b/a Toccoa Inn & Suites has its principal place of business in Stephens County, Georgia; Defendant Mingledorff's, Inc. is a Georgia corporation and is believed to be a co-tortfeasor with one or more Defendants who reside in Stephens County, Georgia; and Defendant Carrier Corporation ("Carrier") is believed to be a co-tortfeasor with one or more Defendants who reside in Stephens County, Georgia, and pursuant to O.C.G.A.§ 9-10-91 and § 9-10-93.

8.

At all times relevant Michont, Inc. was doing business as Toccoa Inn & Suites.

## FACTUAL BACKGROUND

9.

On the evening of Saturday, February 1, 2014, Courtney Patton was a paying guest at Michont, Inc., d/b/a/ Toccoa Inn & Suites, located in Toccoa, Stephens County, Georgia.

10.

After checking in Courtney Patton was given keys to room 203 of the Toccoa Inn & Suites, located in Toccoa, Stephens County, Georgia.

11.

On February 2, 2014, Courtney Patton was asleep in room 203 at the Toccoa Inn & Suites.

12.

At approximately 5:00 a.m. on February 2, 2014, a fire originated in room 203 of the Toccoa Inn & Suites as Courtney Patton was sleeping.

13.

The fire originated in the room's window air conditioning/heating unit, which was designed and manufactured by Carrier and sold to Toccoa Inn & Suites by Mingledorff's, Inc.

14.

The window air conditioning/heating unit, in room 203 of the Toccoa Inn & Suites, was a Carrier packaged terminal air conditioning (PTAC) unit, and according to the Consumer Product Safety Commission, is subject to a recall related to its propensity to catch fire due to one or more defects in the unit.

15.

Courtney Patton was the only occupant of room 203 when the fire started.

16.

Courtney Patton did nothing to cause or contribute to the fire in room 203 of the Toccoa Inn & Suites on February 2, 2014.

17.

The flames erupted near the front door of room 203, where the Carrier air conditioning/heating unit was installed.

18.

The location of the fire and smoke obstructed the only escape path for Courtney Patton.

19.

According to the safety tips in case of fire emergency, located on the back of the door in room 203 of the Toccoa Inn & Suites, room occupants were instructed to go into the bathroom in the event of a fire. (See Exhibit "A" attached to this Complaint)

20.

The heat and smoke from the fire in room 203 of the Toccoa Inn & Suites damaged both corneas of Courtney Patton's eyes.

21.

When Courtney Patton awoke and discovered the fire in room 203 of the Toccoa Inn & Suites, she sought safety in the bathroom of room 203.

## DAMAGES

22.

Plaintiff re-alleges and incorporates paragraphs "1" through "21" as if fully set forth herein.

23.

On April 15, 2014 Plaintiff's counsel provided a detailed written summary of the medical condition of Plaintiff to Defendant Toccoa Inn & Suites and its representative Patrick Ortman. The detailed summary included excerpts from Plaintiff's medical records at Grady Hospital.

24.

On April 15, 2014 Defendant Toccoa Inn & Suites was told that as a result of the fire in room 203, Courtney Patton was permanently injured and her physical condition was and is life threatening.

25.

On April 15, 2014 Defendant Toccoa Inn & Suites was provided written medical documentation that on February 2, 2014, Courtney Patton underwent an endotracheal intubation procedure at Northeast Georgia Medical Center.

26.

On April 15, 2014 Defendant Toccoa Inn & Suites was provided written medical documentation that on February 2, 2014 the injuries suffered by Courtney Patton (as a result of the fire in room 203 of the Toccoa Inn & Suites) included the following:

(a)     loss of consciousness;

(b)     each lung was cauterized;

(c)     requirement for assistance in breathing by use of a machine / ventilator;

(d)     loss of the ability to speak;

(e)     blindness from bilateral corneal burns with clouding over each sclera and pupil;

(f)     burns over 29% of her body;

(g)     burns to eyes, nose, lips and arms; and

(h)     mental, emotional and physical pain and suffering.

27.

Courtney Patton currently undergoes painful procedures, including the insertion of a tube directly into her lungs to suck out debris from the flames.

28.

Courtney Patton is not a malingerer.

29.

Courtney Patton has incurred substantial medical expenses related to injuries from the fire in room 203 on February 2, 2014, including $1,031,123.13 owed to Grady Hospital; $344,012.56 owed to Grady Hospital; and $10,549.21 owed to North Georgia Medical Center.   The special medical expenses now exceed $1,385,000.00 and will continue to accrue.

30.

At the time of the filing of this Complaint, Courtney Patton is incurring additional medical expenses and will have future surgical procedures related to the fire in room 203 on February 2, 2014.

# CAUSES OF ACTION

## Count 1 Liability

## (Negligence)

### 31.

Plaintiff re-alleges and incorporates paragraphs "1" through "30" as if fully set forth herein.

### 32.

The owner of the hotel, Defendant Michont, Inc., d/b/a Toccoa Inn & Suites, was negligent in equipping, maintaining and the upkeep of room 203, at the time room 203 was occupied by Plaintiff Courtney Patton.

### 33.

Such failures to reasonably and properly equip and maintain the room 203 included the failure to repair or replace the defective Carrier PTAC unit, negliegent installation of the PTAC, negligent installation near the only room exit, failure to equip room 203 with a fire suppression system, failure to equip room 203 with functioning smoke and carbon monoxide detectors/alarms and failure to repair or replace batteries in the smoke detector for room 203.

34.

The damages caused to Courtney Patton were caused by the negligence of each Defendant including Defendant, Michont, Inc., d/b/a Toccoa Inn & Suites, as a result of its failure to properly equip and maintain the room therein.

35.

Courtney Patton's damages were caused in part by the negligence of Defendant, Michont, Inc., d/b/a Toccoa Inn & Suites.

**Count 2 Liability**

**(Negligence per se)**

36.

Plaintiff re-alleges and incorporates paragraphs "1" through "35" as if fully set forth herein.

37.

Courtney Patton justifiably relied upon Defendant, Michont, Inc., d/b/a Toccoa Inn & Suites to provide for her safety while occupying room 203.

38.

At all times relevant to this action, room 203 and the adjacent premises were under the management, supervision and control of Defendant Michont, Inc., d/b/a Toccoa Inn & Suites.

39.

Defendant Michont, Inc., d/b/a Toccoa Inn & Suites, through its acts and failures to act, failed to take reasonable steps to protect Courtney Patton from injury.

40.

Plaintiff was trapped in room 203 of the Toccoa Inn & Suites as a result of the fire and smoke near the only escape path and as a result of or caused by Code violations by Defendant.

41.

The Code violations referred to in paragraph 40 above include but are not limited to, the negligent repair, negligent maintenance, negligent management, negligence and gross-negligence of Defendant Michont, Inc., d/b/a Toccoa Inn & Suites, which caused all or a portion of Plaintiff's injuries.

42.

As a proximate cause of the fire and of the resulting injuries to Courtney Patton, Defendant Michont, Inc., d/b/a Toccoa Inn & Suites, acting by and through its agents, was guilty of one or more of the following acts of common law or statutory negligent conduct:

(a)     failing to provide Courtney Patton with a safe place to stay;

(b)    negligent design, installation and maintenance of the PTAC wall unit

located near the only exit out of room 203; and

(c)    failure to install and maintain adequate and advertised fire suppression

and warning devices.

43.

In the alternative, Courtney Patton also relies on the doctrine of res ipsa loquitur. In this connection, Courtney Patton shows that the maintenance and operation of the Toccoa Inn & Suites at 106 Stephen Circle, Stephens County, Toccoa, Georgia 30577, was within the exclusive control of Defendant Michont, Inc., and its agents. The occurrence causing damage to Courtney Patton was one that, in the ordinary course of events, would not have occurred without negligence on the part of Defendant Minchont, Inc., d/b/a Toccoa Inn & Suites or its agents.

## Count 3

### (Expenses for Litigating in Bad Faith)

44.

Plaintiff re-alleges and incorporates paragraphs "1" through "43" as if fully set forth herein.

45.

There is no *bona fide* dispute as to the liability of Minchont, Inc., d/b/a Toccoa Inn & Suites or its agents for the fire and resulting injuries sustained by

Plaintiff Courtney Patton, and in the event any Defendant denies liability for this incident, Plaintiff is entitled to her costs of litigation, including reasonable attorney's fees and expenses of litigation, pursuant to the provisions of O.C.G.A. § 13-6-11.

## (Spoliation)

### 46.

On April 1, 2014, Plaintiff sent by email and certified mail, a letter requesting that certain evidence be preserved as it relates to the subject fire on February 2, 2014. A true and accurate copy of the email is attached hereto as Exhibit "B". The email contained a letter as an attachment, asking that evidence be preserved and made available for inspection. Defendants Michont, Inc., d/b/a Toccoa Inn & Suites and Naran Govan Kesliker have failed to make the premises available for inspection and said Defendants failed to preserve evidence. Evidence in this case has been concealed, lost and destroyed. The failure to preserve evidence that is necessary to contemplated or pending litigation is inexcusable. This conduct creates the presumption that the evidence would have been harmful to all Defendants in this action.

### 47.

Defendants Michont, Inc., d/b/a Toccoa Inn & Suites and Naran Govan Kesliker have intentionally refused to preserve evidence in their possession,

custody and control, which Plaintiff will need to prosecute this case. The concealing and destruction of this evidence has caused Plaintiff harm and will needlessly enlarge the scope of this litigation.

48.

Defendants Michont, Inc., d/b/a Toccoa Inn & Suites and Naran Govan Kesliker have conspired to conceal and destroy evidence, thereby preventing Plaintiff and her attorneys from obtaining valuable evidence which would support Plaintiff's claims as stated herein.

49.

Plaintiff alleges that Defendant Naran Govan Kesliker's actions, including the withholding and destruction of evidence, authorize the piercing of the corporate veil that would otherwise be available to Defendant Minchont, Inc., d/b/a Toccoa Inn & Suites.

50.

Plaintiff shows that Defendants Michont, Inc., d/b/a Toccoa Inn & Suites and Naran Govan Kesliker should be sanctioned for their actions, including the withholding and destruction of evidence.

## Count 4

## (Strict Liability)

### 51.

Plaintiff re-alleges and incorporates paragraphs "1" through "50" as if fully set forth herein.

### 52.

Carrier Corporation was at the time of the occurrence and is now engaged in the business of designing, manufacturing, selling and marketing of PTAC air conditioners/wall heaters and did in fact design, manufacture and sell the air conditioning unit that was installed in room 203 of the Toccoa Inn & Suites on the date of the accident in question.

### 53.

The Carrier PTAC unit installed in room 203 of the Toccoa Inn & Suites caught fire and caused severe, permanent and disabling injuries to Plaintiff Courtney Patton.

### 54.

The Carrier PTAC unit that caught fire and injured Courtney Patton was not merchantable and reasonably suited to the use intended, and its condition when sold is a proximate cause of the injuries sustained by Courtney Patton.

55.

The Carrier PTAC unit that caught fire and injured Courtney Patton failed to perform in a manner reasonably expected in light of its nature and intended function.

56.

The Carrier PTAC unit that caught fire and injured Courtney Patton contained one or more design defects, such that the risks inherent in the product's design outweighed the utility of the product as designed, considering all relevant factors under Georgia law.

57.

The Carrier PTAC unit that caught fire and injured Courtney Patton contained one or more manufacturing defects, inasmuch as the PTAC unit was defective in its manufacture (i.e., deviation from design intent) and/or there were inadequate warnings of its dangerous propensities.

58.

Upon information and belief, Carrier has admitted the PTAC unit in question was defective by issuing a recall for the subject PTAC that acknowledges the presence of the defect and its propensity to cause a fire.

## Count 5

## (Negligence)

### 59.

Plaintiff re-alleges and incorporates paragraphs "1" through "58" as if fully set forth herein.

### 60.

Carrier Corporation was at the time of the occurrence and is now engaged in the business of designing, manufacturing, selling and marketing of PTAC air conditioners/wall heaters and did in fact design, manufacture and sell the air conditioning unit that was installed in room 203 of the Toccoa Inn & Suites on the date of the accident in question.

### 61.

The Carrier PTAC unit installed in room 203 of the Toccoa Inn & Suites caught fire and caused severe, permanent and disabling injuries to Plaintiff Courtney Patton.

### 62.

Carrier was negligent in the design and manufacture of the PTAC unit that caught fire and injured Courtney Patton.

63.

Carrier was also negligent in failing to properly communicate and warn about defects that were discovered post sale, and in failing to properly and effectively recall and provide notice of the recall and hazards of the defective PTAC unit.

64.

The negligence alleged herein was a proximate cause of the accident and of Courtney Patton's injuries and damages.

## Count 6

### (Negligence)

65.

Plaintiff re-alleges and incorporates paragraphs "1" through "64" as if fully set forth herein.

66.

Defendant Mingledorf's, Inc. was at the time of the occurrence and is now engaged in the business of selling and marketing PTAC air conditioners/wall heaters for sale to and for use by members of the general public.

67.

Defendant Mingledorf's, Inc. sold and/or installed the defective Carrier PTAC unit at issue.

68.

Defendant Mingledorf's, Inc. was negligent in failing to warn of dangers of the PTAC that it knew about and which were not adequately communicated by the manufacturer, Carrier.

69.

Defendant Mingledorf's, Inc. knew or should have known of the defects or hazards presented by the Carrier PTAC unit in question and failed to give an adequate warning concerning such dangers.

70.

The negligence alleged herein was a proximate cause of the accident and of Courtney Patton's injuries and damage.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for the following relief:

(a)    That summons issue requiring the Defendants to appear as provided by law to answer this Complaint;

(b)    That the Plaintiff have a trial by jury;

(c)    That Plaintiff recover all damages for all losses compensable under Georgia law as set forth above;

(d)     That Plaintiff have and recover all medical expenses incurred, past, present and future, of at least $1,385,000.00, and more as may be proved at trial;

(f)     That Plaintiff have and recover her attorney's fees and expenses of litigation; should the Defendants deny liability and for the bad faith destruction of evidence;

(g)     That all costs be cast against the Defendants;

(h)     That Defendants be sanctioned for the destruction of evidence; and

(i)     That Plaintiff have such other and further relief as the Court shall deem just and appropriate.

This 21st day of July 2014.

**MCDONALD & CODY, LLC**

By: _____
**GUS MCDONALD**
Georgia Bar No. 488795
**P. GERALD CODY, JR.**
Georgia Bar No. 172765
*Attorneys for Plaintiff*

P.O. Box 555
Cornelia, GA 30531
(706) 778-5291
Gus@mcdonaldcody.com
Gerald@mcdonaldcody.com

# EXHIBIT A

# SAFETY TIPS

1. NEVER smoke in bed.
2. Locate fire exits.
3. **Check for any possible obstructions to doors.**
4. **Locate fire extinguishers on this floor.**
5. Keep your room key on a table next to your bed.
6. If you leave your room, keep door closed and take your key.
7. Write down the number for the local fire department and keep it next to the **phone.**

THE LOCAL FIRE DEPARTMENT PHONE NUMBER IS   9 + 911.
For front desk DIAL 0.

# IN CASE OF FIRE

1. DON'T PANIC; remain calm.
2. Report fire to front desk or fire department as appropriate.
3. If room is smokey, get on hands and knees (or stomach) and crawl to door.
4. Feel door knob; if HOT, do NOT open door; if cool, **open slowly.**

# IF YOU CANNOT LEAVE THIS ROOM:

5. Call front desk (or "manager," "fire department" or other appropriate person) and let them know where you are.
6. **Wet sheets,** towels or clothing and stuff them in all cracks around doors and vents.
7. **Turn on bathroom fan.**
8. **Fill bathtub (or "sink") with cold water for firefighting.**
9. Using ice bucket or other container, keep doors and walls wet.
10. If room is smokey, fold a wet towel in a triangle and tie over your nose and mouth; stay low.
11. Make yourself visible to rescue personnel through any window.
12. **Keep firefighting until help arrives; DON'T GIVE UP!**

# FOR YOUR SAFETY, THIS BUILDING HAS THE FOLLOWING

1. Fire extinguishers.
2. Posted evacuation plans in every room.
3. Fire resistant drapery and bedding.

# EXHIBIT B

**Saturday, July 19, 2014 at 1:25:56 PM Eastern Daylight Time**

**Subject:** (none)
**Date:** Tuesday, April 1, 2014 at 5:15:56 PM Eastern Daylight Time
**From:** Helen Lovell
**To:** office@toccoainn.com
**CC:** Gerald Cody, Gus McDonald, Sam Sliger, Teresa Maye

Please see the attached letter from Mr. Cody regarding the fire that occurred on February 2, 2014.  Please preserve and, if necessary, retrieve all items identified in the attached letter.

Thank you,

Helen E. Lovell
Assistant to P. Gerald Cody, Jr., Esquire
McDonald & Cody, LLC
P. O. Box 396
Cornelia, GA  30531
(706) 778-7178

**CONFIDENTIALITY:** This e-mail and any attachments contain information from the law firm of McDonald & Cody, LLC, and is intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of this e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments. If you receive this e-mail in error, please notify McDonald & Cody, LLC, at the telephone number(s) and e-mail address provided.

**TREASURY DEPARTMENT CIRCULAR 230 NOTICE:** Unless expressly stated otherwise, any information, opinion or advice included in this communication (including any attachments) is not intended to constitute a complete analysis of all tax considerations, and is not intended to be used (and cannot be used) for (i) the purpose of avoiding any tax-related penalty that may be imposed under the Internal Revenue Code, or (ii) to support the promotion or marketing of, or to recommend to another party any transaction or matter related to federal taxation. Each taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

**NO CLIENT RELATIONSHIP:** Communication with an attorney or staff member at McDonald & Cody, LLC does not by itself create an attorney-client relationship or constitute the provision or receipt of legal advice. Any communication from an attorney or staff member should be considered informational only, and should not be relied or acted upon until a formal attorney-client relationship is established via a written agreement.



# McDonald & Cody, LLC

## ATTORNEYS AT LAW

**North Office:**

383 U.S. Highway 441 Business
P. O. Box 396
Cornelia, Georgia 30531
O: 706.778.7178
F: 706.776.6371
www.mcdonaldcody.com

**North Office:**
Douglas W. McDonald, Sr.
P. Gerald Cody, Jr., LLC

April 1, 2014

VIA EMAIL: office@toccoainn.com
ORIGINAL VIA FIRST CLASS MAIL
Lata Kesliker
Manager
Toccoa Inn & Suites
106 Stephen Circle
Toccoa, Georgia 30577

RE:   Incident February 2, 2014
      Approximately 5:30 a.m.

Dear Mr. Kesliker:

Please accept this as notice that my firm has been contacted by the family of Courtney Delray Patton.  We understand that Ms. Patton was badly burned in a fire that occurred at approximately 5:30 a.m. on February 2, 2014, in the room which she occupied at the Toccoa Inn & Suites.

**Please accept this as a request that the wall unit (heater) which is believed to have caused or contributed to the fire which led to Courtney Delray Patton's injuries at the time of the incident, approximately 5:30 a.m. on February 2, 2014, be immediately secured, preserved and maintained.  In the event the wall unit (heater) has been moved, please accept this as a request that you immediately retrieve said wall unit (heater) and secure it for us and our experts to view, photograph and examine. Also, please accept this as a request that you please preserve evidence of the existence or lack thereof of fire alarms, smoke alarms, carbon monoxide alarms, including photographs, videos or other evidence, which document whether said items were present in the room occupied by Courtney Delray Patton or other rooms/units at Toccoa Inn & Suites at the time of the subject fire. Also, please accept this as a request that you please preserve evidence of the existence or the lack thereof of any sprinkler system that was present in the room occupied by Courtney Delray Patton or other rooms/units at Toccoa Inn & Suites at the time of the subject fire.**

**Please advise of a date, time and location when a member of my firm and such representatives as we deem appropriate can come to view the room where Courtney Delray Patton was staying and any adjoining rooms where there was fire damage at the time of the subject incident.  My firm will also need to make arrangements to view, inspect and photograph the rooms and the wall unit (heater) which is believed to have caused or contributed to the subject fire.**

Lata Keslinker
Page 2
April 1, 2014


The purpose of this letter is to formally demand that you and all of Toccoa Inn & Suites' employees, agents, servants, representatives, and any independent contractors, not discard, lose, alter, change, tamper with, destroy, modify or in any way alter any evidence, including, but not limited to, the wall unit (heater) which is believed to have caused or contributed to the subject fire.

This letter is also intended as a demand that all of the above information be maintained and made available to my firm or such experts as we may deem appropriate. This request is made pursuant to all applicable law, including, but not limited to, O.C.G.A. § 24-4-22, and the cases decided pursuant to same.

Pursuant to Georgia law, should any of the items noted above be destroyed or otherwise become unavailable, a legal presumption will arise that the destroyed or unavailable evidence would have contained information or provided inferences harmful to Toccoa Inn & Suites. In addition, you should be aware that there are both civil and criminal penalties which can be assessed/imposed for the spoliation of evidence.

Please confirm that you have preserved the items noted above. Also, please have someone contact me to advise of a date, time and location when a member of my firm and such representatives as we deem appropriate can come to view, inspect and photograph the room where Courtney Delray Patton was staying and any adjoining rooms where there was fire damage at the time of the subject incident. This request shall also include a request to view, inspect and photograph the rooms and the wall unit (heater) which is believed to have caused or contributed to the subject fire. This request shall also include a request that we be allowed to view, inspect and photograph evidence of the existence or lack thereof of fire alarms, smoke alarms, carbon monoxide alarms, and/or sprinkler systems, including photographs, videos or other evidence which document whether said items were present in the room occupied by Courtney Delray Patton or other rooms/units at Toccoa Inn & Suites at the time of the subject fire.

Please advise.

Respectfully,

P. Gerald Cody, Jr.

PGCJr/hl
cc: Courtney Delray Patton



# McDonald & Cody, LLC

## ATTORNEYS AT LAW

**North Office:**
Douglas W. McDonald, Sr.
P. Gerald Cody, Jr., LLC

**North Office:**

383 U.S. Highway 441 Business
P. O. Box 396
Cornelia, Georgia 30531
O: 706.778.7178
F: 706.776.6371
www.mcdonaldcody.com

April 3, 2014

VIA EMAIL: office@toccoainn.com
VIA FAX: (706) 886-0003
ORIGINAL VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
Naran G. Kesliker
Michont, Inc., d/b/a Toccoa Inn and Toccoa Inn & Suites
106 Stephen Circle
Toccoa, Georgia 30577

RE:     Incident February 2, 2014
        Approximately 5:30 a.m.

Dear Mr. Kesliker:

        This will serve as a follow-up to my correspondence to you dated April 1, 2013. Attached is a copy of said correspondence.

        As noted in my correspondence to you dated April 1, 2014, please accept this as a request that the wall unit (heater) which is believed to have caused the fire which led to Courtney Delray Patton's injuries at the time of the incident, approximately 5:30 a.m. on February 2, 2014, be immediately secured, preserved and maintained.  In the event the wall unit (heater) has been moved, please accept this as a request that you immediately retrieve said wall unit (heater) and secure it for us and our experts to view, photograph and examine. Also, please accept this as a request that you please preserve evidence of the existence or lack thereof of fire alarms, smoke alarms, carbon monoxide alarms, including photographs, videos or other evidence, which document whether said items were present in the room occupied by Courtney Desiree Patton (formerly identified as Courtney Delray Patton) or other rooms/units at Toccoa Inn & Suites at the time of the subject fire. Also, please accept this as a request that you please preserve evidence of the existence or the lack thereof of any sprinkler system that was present in the room occupied by Courtney Delray Patton or other rooms/units at Toccoa Inn & Suites at the time of the subject fire.

        During our investigation into this matter, we have learned that Holcomb Construction performed the renovations to the room damaged in the subject fire.  In speaking with Jerry Holcomb, we understand that the wall unit was removed from the renovation site on March 20, 2014, by a gentleman driving a 1989 Buick Skylark.  We have confirmed with the Georgia State Fire Marshall's Office, the Toccoa Fire Department and the Toccoa Police Department that none of them authorized or instructed that the wall unit could be removed or destroyed.

Naran G. Kesliker
Page 2
April 3, 2014

We have canvassed the area in an attempt to locate the damaged wall unit. We have checked with several salvage/recycling businesses in the Toccoa area, including J. V. Whitlock Recycle and Carter's Royal Dispose All, in an attempt to locate the damaged wall unit. We understand that the wall unit is a special item that requires a permit to crush, due to the coils and refrigerant.

We are being assisted in our investigation by the Toccoa Police Department, the Stephens County Sheriff's Office, the Georgia State Patrol, the District Attorney's office and various salvage yards in Stephens County.

The purpose of my letter to you dated April 1, 2014, was to formally demand that you and all of Toccoa Inn & Suites' employees, agents, servants, representatives, and any independent contractors, not discard, lose, alter, change, tamper with, destroy, modify or in any way alter any evidence, including, but not limited to, the wall unit (heater) which is believed to have caused or contributed to the subject fire. In view of the fact that you now contend that your contractor/agent, Holcomb Construction, knowingly, willfully and intentionally failed and refused to retain the subject wall unit, please use all methods and means available to retrieve the subject wall unit.

I understand that yesterday you advised one of my partners, Gus McDonald, and our Law Clerk, Sam Sliger, that your insurance agent and your insurance investigator advised you that you could destroy or get rid of the wall unit. If you now contend differently, please advise in writing. Regardless of why you allowed the wall unit to be destroyed/disposed of, please accept this as a request that you employ all means necessary to locate the subject wall unit and the identity of the person driving the 1989 Buick Skylark that took the wall unit from the Toccoa Inn, a/k/a Toccoa Inn & Suites. In addition, we understand that Jeff Haslup, Investigator for the Toccoa Fire Department, and Brian Smith, an Investigator with the State Fire Marshall's Office, both advised you that you were supposed to retain the wall unit (heater).

My letter to you dated April 1, 2014, was also intended as a demand that all of the above information be maintained and made available to my firm or such experts as we may deem appropriate. This request is made pursuant to all applicable law, including, but not limited to, O.C.G.A. § 24-14-22, and the cases decided pursuant to same.

Pursuant to Georgia law, should any of the items noted above be destroyed or otherwise become unavailable, a legal presumption will arise that the destroyed or unavailable evidence would have contained information or provided inferences harmful to Toccoa Inn & Suites. In addition, you should be aware that there are both civil and criminal penalties which can be assessed/imposed for the spoliation of evidence.

Naran G. Kesliker
Page 3
April 3, 2014


In my letter to you dated April 1, 2014, I asked that you please confirm that you have preserved the items noted above.  I also asked that you please have someone contact me to advise of a date, time and location when a member of my firm and such representatives as we deem appropriate can come to view, inspect and photograph the room where Courtney Desiree Patton was staying and any adjoining rooms where there was fire damage at the time of the subject incident.

This request shall also include a request to view, inspect and photograph the rooms and the wall unit (heater) which is believed to have caused the subject fire.  This request shall also include a request that we be allowed to view, inspect and photograph evidence of the existence or lack thereof of fire alarms, smoke alarms, carbon monoxide alarms, and/or sprinkler systems, including photographs, videos or other evidence which document whether said items were present in the room occupied by Courtney Desiree Patton or other rooms/units at Toccoa Inn & Suites at the time of the subject fire. We wish to inspect the room that Courtney Desiree Patton was in at the time of the fire and the other rooms located on the same level or adjacent to her room.

Please advise.

Respectfully,

P. Gerald Cody, Jr.

PGCJr/hl
cc:  Sara Crosby, IAT Specialty Insurance Company, Via Email
      Courtney Patton













CARRIER MEXICO S.A. DE C.V.
PURCHASE ORDER A00-256466  REV-

PAG.: 1

FAX: 727-5307375
727-5309580x320

INVOICE TO:
CARRIER MEXICO S.A. DE C.V.
GALEANA 469 OTE.
SANTA CATARINA

NL 66350 MEX
VENDOR NO.:28983
ADDRESS:
TECHNOLOGY RESEARCH CO.
5250 140TH AVENUE NORTH

CLEARWATER          FLO 33760          USA
ORDER TYPE: Default          ACCOUNT NO.: 41012
TERMS:  Due at 30 days          CURRENCY: USD
VENDOR CONTACT: SHELBY ROBERTI

DELIVERY:
SEEGROVE INTL'L SHIPPERS, INC.
13601 North Lamar Drive
Killam Industrial Park
LAREDO
TX  78045  USA
ATTN: Felix Zarate / Betty Sanmiguel
CUSTOM BROKER:

RFC:

SHIP VIA:

CREATOR: Ara Saldana
REQUISITION:
CAR:                RESP:
ENTRY DATE:   MARCH/3/2008
PRINT DATE:    FEB/11/2015

| LIN | QUANTITY | U/M | VENDOR ITEM NO. | ITEM NUMBER | REV | DESCRIPTION | WHS | DUE DATE | UNIT PRICE | AMOUNT/TAX |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 320.00 | Item | Dw: 52CQ402554 | 52Q402554 | Rev: 1 | 1 CORD, SERVICE LCDI MMV 15A 14G | WP | MAY/12/08 | 9.0000 | 2880.00 .00 |
| 2 | 1080.00 | Item | Dw: 52CQ402554 | 52Q402554 | Rev: 1 | 1 CORD, SERVICE LCDI MMV 20A 14G | WP | MAY/24/08 | 9.3000 | 1004.00 .00 |
| 3 | 60.00 | Item | Dw: 52CQ402554 | 52Q402554 | Rev: 1 | 1 CORD, SERVICE LCDI MMV 30A 12G | WP | JUNE/03/08 | 14.3600 | 861.60 .00 |

SUB TOTAL.:          13785.60
TOTAL TAX:               .00
TOTAL:          13785.60

The Terms and Conditions of the Purchase of Goods and Services which are specified in the purchase order (PO) consist in (i) All of the provisions in the cover of this PO, (ii) The Carrier Mexico S. A. de C.V.' Terms and Conditions of Purchase (annexed or printed on the back of this PO), and (iii) All of the drawings, specifications, instructions or descriptions of the referred products on the PO.
Carrier and the Supplier explicitly recognize the following: This PO comprise the totality of the agreement between the parties, except when the provisions of this PO conflict with the provisions of any other properly formalized agreement between the parties, and applicable to the goods and services outlined in this PO in which case, the properly formalized agreement will have priority; and all of the remaining provisions proposed by the Supplier, including the ones applicable to the approval conditions of the PO would be excluded. Supplier's approval shall be made by any of the following actions: by delivering a signed copy of the PO, by entering Carrier's online site, or by any electronic means including Supplier's email or that of its employees, and/or the delivery of service or good.

: Please review each item's revision level in order to match with your current print or specification.



Brenda Blanca Amores
Expert Translator

# TERMS AND CONDITIONS OF PURCHASE (COMMERCIAL)

1. CONTRACT OF PURCHASE. Subject to the terms and conditions stated herein (including all drawings, specifications and other documents attached to this offer or referred to in this offer), Se''er agrees to sell to Buyer and Buyer agrees to purchase from Se''er, the goods or services described in this order. If for any reason Se''er shall fail to return to the Buyer the signed acknowledgment copy of this order, any conduct by Se''er which recognizes the existence of a contract pertaining to the subject matter hereof shall constitute unequal fied acceptance by Se''er of this order, including all of the terms and conditions. The terms of this order shall constitute the complete and exclusive statement of the terms and conditions of the contract between the parties and may be modified only by written instrument executed by the authorized representatives of both parties. Any terms proposed by the Se''er which add to, vary from, or conflict with the terms herein are hereby objected to. If this order has been issued by Buyer in response to Se''er's offer and if any of the terms herein are additional to or different from the terms of such offer, then the issuance of this order by Buyer shall constitute an acceptance of such offer, subject to the express condition that this order constitutes the entire agreement between Buyer and Se''er with respect to the subject matter hereof and the subject matter of such offer. Further, Se''er shall be deemed to have so assented and acknowledged unless Se''er notifies Buyer to the contrary in writing within seven (7) calendar days of receipt of this order. Any reference by Buyer to Se''er's proposal is solely for the purpose of incorporating the description and specifications of the goods and services contained therein to the extent that such description and specifications do not conflict with the description and specifications on the face of this order.

2. PRICE. The price for the goods or services shall be the price as shown on this order. The Se''er warrants that the agreed price is not less favorable than that currently extended to any other Buyer for the same or like goods in equal or lesser quantities.

3. TAXES. Unless exempt therefrom, all taxes which Se''er is required by law to collect from Buyer are included in the price stated herein.

4. INVOICES. Unless otherwise agreed in writing, invoices are paid net sixty (60) days from date of receipt of the goods or completion of any required services, and not on the basis of Se''er's invoice date. All invoices must contain the following information. Purchase order number, item number, description of items, sizes, quantities, unit prices. Payments of invoices shall not constitute acceptance of the goods and shall be subject to adjustment for shortages, defects and other failure of Se''er to meet the requirements of this order. Buyer's tender of payment by check is sufficient, provided such check is honored, upon presentment by the "Payor Bank."

5. DELIVERY. Unless otherwise agreed in writing, the goods shall be delivered to Buyer assembled, completed, and ready for use, and the Buyer shall accept delivery of such goods or performance of any required services at the location designated on this order. The obligation by Se''er to meet the delivery or performance date is of the essence in this order. Delivery of goods or performance of any required services is not complete until goods or services have been actually received and accepted by Buyer.

6. EXCUSABLE DELAY. Se''er shall not be deemed to be in default on account of delays in the delivery of goods or in the performance of services or any other act to be performed by Se''er under this order due to any causes to the extent it is beyond Se''er's control and not occasioned by Se''er's fault or negligence, provided that promptly upon the occurrence of any event which may result in a delay in the delivery of goods or performance of services hereunder. Se''er shall give notice thereof to Buyer which notice shall identify such occurrence and specify the period of delay which may be reasonably expected to result therefrom. In the event delivery of the goods or performance of services shall be delayed due to any cause beyond Se''er's control and not occasioned by Se''er's fault or negligence for a period of more than thirty (30) days after the end of the calendar month in which delivery is otherwise required hereunder, Buyer shall have the option to terminate this order upon written notice given to the Se''er within five (5) business days after the expiration of such thirty (30) day period, and such termination shall discharge all obligations and liabilities of the parties hereunder with respect to undelivered goods, services, data or other items to be furnished hereunder.

7. WARRANTY. Se''er expressly covenants and warrants that all goods and services covered by this order shall conform to the specifications, drawings, samples or other description upon which this order is based, shall be fit and sufficient for the purpose intended, merchantable, of good material and workmanship and free from defect, and that goods and services of Se''er's design will be free from defect in design. Inspection, test, acceptance or use of the goods furnished hereunder shall not affect the Se''er's obligation under this warranty, and such warranties shall survive inspection, test, acceptance and use. This warranty shall run to Buyer, its successors, assigns, and customers, and the users of its products. Se''er agrees to replace or correct defects of any goods or services not conforming to the foregoing warranty promptly, without expense to Buyer, when notified of such nonconformity by Buyer. Buyer may at its option choose to correct any non-conforming delivered goods or services through repair, sort and/or rework. Se''er shall reimburse Buyer for all reasonable expenses connected with such correction or Buyer may deduct such expenses from any payments due Se''er.

8. QUALITY OF GOODS. All goods sold by Se''er to Buyer pursuant to this order shall be new and conform to Buyers quality standards and requirements set forth in any specifications, drawings, samples or other document upon which this order is based. Prior to delivery, Se''er shall inspect and test the goods for quality in compliance with this order. The Se''er shall keep records of all such quality inspections and tests and, if so requested by Buyer, supply Buyer with copies of such records. Buyer, without prejudice to any other rights or remedies, including the right to inspect goods after delivery, shall have the right at all times to inspect and test the goods during manufacture or processing or while stored under Se''er's control. Se''er shall not make any changes during the term of this order in the quality or in Se''er's processes related to the goods without prior notification to and written acceptance of such changes by the Buyer. Any accepted changes shall become the control ng standard of quality for the remaining term of this order.

9. INDEMNIFICATION. Se''er covenants and agrees at all times to protect, defend, hold harmless and indemnify Buyer, its parent and affiliated companies, and their respective directors, officers, employees, successors and assigns from and against any and all losses, costs and expenses, and from and against any and all claims for loss, damage or injury and from and against any suits, actions, or legal proceedings of any kind brought against Buyer, or such other parties by or on account of any person, persons, or entities, or on account of any injuries received or sustained by any person, persons, or entities in any manner (howsoever arising, including without limitation, by reason of neg'gence, breach of warranty, defect in design, material or workmanship or otherwise, and even though strict liab'ity be claimed), directly or indirectly caused by, incident to, or growing out of breach of this order, defects in the design, manufacture, or material's used in the goods, neg'gence in the manufacture or provision of the goods supp'ed, or performance of the services hereunder. Se''er further agrees to take upon itself the settlement of all such claims and the defense of any su t, suits, or legal proceedings of any kind brought to enforce such claim or claims, and to pay all judgments entered in such suit, suits or legal proceedings, and all costs of attorneys' fees or other expenses. Se''er agrees that in any instance where such claims in any way affect Buyer's interests under this order or otherwise, Se''er shall not consummate any settlement without Buyer's prior written consent. Se''er's covenants of indemnity herein shall continue in full force and effect notwithstanding the termination or expiration of this order.

10. PATENT INDEMNIFICATION. Se''er will indemnify and hold Buyer harmless against all liab'ity and expenses, including attorneys' fees, arising from actual or claimed infringement or patent trademark, copyright, misappropriation of trade secrets, breach of confidential relationship, or other rights occasioned by the manufacture, sale or use of the goods or services provided under this order.

11. INSPECTION. The goods and services are subject to Buyer's inspection and approval within a reasonable time after delivery, notwithstanding any prior payment. Buyer, without prejudice to any other rights or remedies, shall have the right to reject defective goods and, at Se''er's risk (notwithstanding the terms of delivery) and expense, return the same to Se''er or dispose of the same according to Se''er's instructions. No goods returned as defective shall be replaced without the written consent of Buyer. Payment for the goods delivered hereunder shall not constitute acceptance hereof. Buyer shall have the right to inspect such goods and to reject any or all of said goods which are in Buyer's judgment defective or nonconforming to this order. Goods so rejected may be returned to the Se''er at Se''er's expense. Buyer may at its option, require Se''er to grant a full refund or credit to Buyer, in lieu of replacement, with respect to any item the Buyer is entitled to reject hereunder.

12. CHANGES. Buyer shall have the right at any time prior to the delivery date of the goods or services to make changes in drawings, designs, specifications, packaging time and place of delivery, nature and

duration of services, and method of transportation. If any such changes cause an increase or decrease in the cost of the time required for the performance or otherwise affect any other provision of this order, an equitable adjustment shall be made and this order shall be modified in writing accordingly.

13. CANCELLATION/TERMINATION. In addition to the other rights hereunder, Buyer reserves the right to cancel this order or any part thereof without further cost or liab'ity if Se''er breaches any of the provisions of this order, or if Se''er becomes insolvent or the subject of any proceeding under the law relating to bankruptcy or the relief of debtors. Buyer further reserves the right to terminate this order or any part thereof for the sole convenience of the Buyer. If such termination right is invoked, all reasonable costs incurred to date of termination will be reimbursed, provided Se''er establishes entitlement thereto.

14. ASSIGNMENT. No right or interest in this contract shall be assigned by Se''er without the written permission of the Buyer. Any attempted assignment or delegation shall be wholly void and total'y ineffective for all purposes. Se''er shall remain liable for performance notwithstanding Buyer's approval of an assignment. Any person or entity to which this order is assigned pursuant to the provisions of Bankruptcy Code 11 U.S.C., Section 101 et seq., shall be deemed without further act or deed to have assigned all open demand exercise and deliver to Buyer an instrument confirming such assumption.

15. BUYER'S PROPERTY. All tool's, equipment dies, gauges, models, drawings or other material's furnished by the Buyer to Se''er or made by Se''er for the purpose of this order or paid for by the Buyer and all replacements thereof and material's faxed or attached thereto, shall be and remain the property of the Buyer. All Buyer's property and, whenever applicable, each individual item thereof, will be plainly marked and otherwise adequately identified by Se''er as "property of Carrier Corporation," will at Se''er's expense be safely stored (separate and apart from Se''er's property whenever practicable) and will be kept free of all lens, claims, encumbrances and interests of third parties. Se''er will not substitute any property for Buyer's property, will not deliver or make available to any third party any of Buyer's property or any property or goods developed, manufactured or created with the aid of any of Buyer's property and will not use any of Buyer's property or any property or goods manufactured, developed or created with the aid of Buyer's property, except in filling the orders of Buyer. Upon completion by Se''er of this order, or upon the written request of Buyer at any time. Se''er will prepare all Buyer's property for shipment and deliver such property to Buyer in the same condition as original'y received by Se''er, reasonable wear and tear accepted. Buyer shall have the right, at all reasonable times, upon prior notice to enter Se''er's premises to inspect any and all Buyer's property and any property or goods manufactured, developed or created with the aid of any Buyer's property. Buyer's property is identified on this order. Se''er shall have such responsibi''ty for such property as is chargeable to Se''er by law by reason of its position as a bailee

16. GRATUITIES. Se''er has no and will not offer or give to any employee, agent or representative of Buyer any gratu'ty with a view toward securing any business from Buyer by influencing such person with respect to the terms, conditions, or performance of any contract with or order from Buyer. Any breach of this warranty shall be a material breach of each and every contract between Buyer and Se''er.

17. CONFIDENTIAL INFORMATION. All specifications, drawings, designs, manufacturing data, other information delivered by Buyer to Se''er are the property of Buyer. They are delivered solely for the purpose of Se''er's performance of this order and on the express condition that neither they nor the information contained there in shall be disclosed to others nor used for any purpose other than in connection with this order without the prior express written consent of the Buyer. Such specifications, drawings, designs, manufacturing data and other information are to be returned to the Buyer promptly upon Se''er's completion of this order. The obl'gations under this paragraph w'l survive the cancel'ation, termination, or completion of this order. Any unpatented knowledge or information concerning Se''er's goods, products, methods, or manufacturing processes which Se''er may disclose to Buyer incident to the manufacture of the goods or the performance of services covered by this order shall, unless specifical'y agreed to in writing, be deemed to have been disclosed as part of the consideration for this order, and Se''er agrees not to assert any cla m against Buyer by reason of Buyer's use or al'eged use thereof, and if this order involves experimental research or development work paid for by the Buyer, Se''er agrees to grant to Buyer an irrevocable and exclusive and royalty-free license to make, have made, use and sell any inventions resulting from the work under this order.

18. COMPLIANCE WITH LAWS. Se''er warrants that all goods or services supp'd hereunder will have been produced or provided in compliance with, and Se''er agrees to be bound by, all applicable federal, state and local laws, orders, rules, regulations, guidelines, standards, limitations, control's, prohibitions or other requirements which are contained in, issued under, or otherwise adopted pursuant to such laws. In addition, that Se''er has complied with applicable federal and state laws, rules and regulations, included, but not limited to E.O. 11246, section 202, 11625, 11701, and 11758 pertaining to fair employment practices or which proh b't discrimination because of age, color, sex, physical or mental handicap, race, national'ty, rel'gion or creed, or other similar federal or state laws or regulations.

19. REMEDIES CUMULATIVE. Buyer's remedies shall be cumulative and remedies herein specified do not exclude any remedies allowed by law. Waiver of any breach shall not constitute waiver of any other breach of the same or any other provision. Acceptance of any items or payment therefor shall not waive any breach.

20. TITLES/LIENS. Title to all goods and services for which Buyer has paid fully or in part shall vest in Buyer immediately upon such payment. Se''er shall pay for labor, services, materials, equipment and parts thereof, and other expenses incurred by its supp'ers in connection with the order and indemnify and defend Buyer against all claims and liens arising out of unpaid accounts.

21. INSURANCE. In the event this order requires Se''er to enter upon the premises of Buyer or Buyer's customer, Se''er represents that it has and will maintain the following types and amounts of insurance coverage:

| | |
|---|---|
| (1) Workers' Compensation | Statutory |
| (2) Employers' Liab'ty | $500,000 |
| (3) Comprehensive General Liab'ty | |
| (including blanket contractual liab'ty): | |
| Bodily Injury | $1,000,000 each person |
| | $1,000,000 each occurrence |
| | $1,000,000 aggregate |
| Property Damage | $ 500,000 each occurrence |
| Broad Form Property Damage | |
| Personal Injury | $ 500,000 |
| (4) Comprehensive Automobile Liab''ty: | |
| Bodily Injury | $1,000,000 each person |
| | $1,000,000 each occurrence |
| Property Damage | $ 500,000 each occurrence |

Se''er will furnish a certificate of insurance reflecting such coverage to Buyer upon request

22. ANTI-KICKBACK ACT. By accepting this order, Se''er represents, covenants and warrants to and with Buyer that Se''er and all subcontractors below Se''er are in full compliance with the Anti Kickback Act of 1986 ("The Act"). Se''er further agrees to indemnify and hold harmless Buyer, its parent, and their respective directors, officers and employees from any violation of The Act by Se''er or any subcontractors below Se''er. All defined terms set forth in the Act apply to this clause

23. GOVERNING LAWS. THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED ACCORDING TO THE LAWS OF THE STATE OF NEW YORK, EXCLUDING ITS "CHOICE OF LAW" OR "CONFLICT OF LAW" RULES.

24. EXCLUSION OF U.N. CONVENTION ON INTERNATIONAL SALES. Unless otherwise agreed to by Se''er and Buyer in writing, there is excluded from this order (including any amendments or changes thereto) the application of the United Nations Convention on Contracts for the International Sales of Goods

25. DRAWBACK. Upon request, Se''er agrees to furnish completed drawback certificates and retain substantiating documentation pursuant to 19 U.S.C. Section 1313.

# GRISWOLD CONSULTING
## Forensic Fire & Electrical Analysis

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites**
106 Stephens Circle
Toccoa, GA
Claim No. 155962372123
GC File No: GC201402022
April 14, 2014

# GRISWOLD CONSULTING
## Forensic Fire & Electrical Analysis

April 14, 2014

**IAT Specialty**
1314 Douglas Street, Suite 1600
Omaha, NE 68102

Attention:   Patrick Ortman

Subject:   **Fire Origin and Cause Investigation**
**The Toccoa Inn & Suites**
106 Stephens Circle
Toccoa, GA
Claim No.: 155962372123
GC File No.: GC201402022

Dear Mr. Patrick Ortman:

**Griswold Consulting, LLC** is pleased to submit this summary regarding our fire scene findings at the above-referenced location which was conducted on February 10, 2014 by **Griswold Consulting** Forensic Fire Investigator, Mr. Loren M. Griswold. The purpose of the investigation was to render a professional opinion as to the origin and cause of the fire that reportedly damaged the above referenced motel (Room 203) on February 02, 2014 and to list any and/or all contributing factors. The site assessment included an examination of the exterior and interior of the motel with photographic documentation of relevant observations and findings. Mr. Naran Kesliker, the insured/owner of the property, was present during our assessment.

**Executive Summary**

Based on **Griswold Consulting's** investigation of the fire damage at the loss site, as presented within the remainder of this report, our conclusions are summarized as follows:

- No evidence of an exterior fire was discovered during the fire scene inspection.

- The fire originated in motel room 203 of the structure.

- The area of origin was determined to be the wall mounted HVAC unit.

- The cause of the fire was attributed to resistance heating where the HVAC plug was inserted in a wall outlet.

**www.GriswoldConsulting.net**
280 Jackson Mill Rd, Demorest, GA 30535
Tel: (706) 949-1110 / Fax: (706) 754-1288
Investigations conducted throughout the Southeastern United States

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |
|---|---|---|

Fire Origin & Cause Investigation
The Toccoa Inn & Suites, Toccoa, GA
GC File No.: GC201402022
April 14, 2014

Page 2 of 23

- Once the fire was initiated, it spread in a normal fashion eventually causing substantial damage to the motel room until extinguished by the fire department.

- No evidence of an incendiary ignition source was discovered in the area of origin during this investigation.

## Site Description

The property can be described as a two-story, masonry and steel construction; multi-tenant motel **(Photograph 1)**. The structure is approximately 25+ years old. The latitude at the scene is North 34 degrees 34.233 and the longitude is West 83 degrees 18.628. These coordinates were acquired utilizing a GPS, Global Positioning System receiver and taken at the southeast corner of the structure.

The front of the structure faces south. The roof is a typical gable type construction and covered with asphalt composition shingles. The exterior of the loss is covered with brick veneer and the foundation consists of a concrete slab. The structure was in good condition with no indication of recent and/or ongoing repairs and/or renovations.

The motel rooms are protected by smoke detectors located in the interior of each room. There is no central or monitored fire and/or intrusion alarm and no automatic suppression system associated with this structure.

## Fire Suppression Operation

**Griswold Consulting** obtained a copy of the Fire Incident Report for the fire at the Toccoa Inn & Suites which documented the following information:

- The Toccoa Fire Department received a call for a fire at 0531 hours on February 02, 2014. The fire department arrived on the scene at 0537 hours.

- Upon arrival to the scene, fire crews discovered a fire emitting from the interior of motel room 203.

- The fire was eventually extinguished and the scene left secured.

- This investigator interviewed the Toccoa Fire Department and discovered that they had turned their investigation over to Brian Smith of the Georgia State Fire Marshal's Office.

- Investigator Smith confirmed he investigated this loss. He further reported that the fire originated in motel room 203 and that an occupant was injured during the blaze.

- At this writing, Investigator Smith's conclusion is undetermined.

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |

Fire Origin & Cause Investigation
The Toccoa Inn & Suites, Toccoa, GA
GC File No.: GC201402022
April 14, 2014

Page 3 of 23

## Exterior Examination

At the time of the site inspection, a visual, non-destructive observation was made regarding the exterior of the structure.  The exterior inspection was conducted by progressing from the least to the greatest amount of fire damage and was documented by digital photography:

- Exterior burn patterns indicate that the fire originated from within the interior of motel room 203.

- During the exterior inspection, no obvious deficiencies or other unusual attributes were observed.

- There were no containers and/or other devices unusual for the environment observed.

- There is no evidence of an exterior origin, nor physical evidence located on the exterior of the premises.

- There was no exterior debris to examine.

- All utilities were found disconnected at the time of the site inspection.

## Interior Examination

At the time of the site visit, the interior inspection, which was also documented by digital photography, was conducted by working from the least damaged area(s) to the most severely damaged area(s) in order to consider the origin and all possible causes of fire.  Although all portions of the interior have sustained varying degrees of heat, smoke and fire damage, the following conclusions were developed:

- The greatest amount of fire damage occurred in the interior south side of room 203.

- Burn patterns, heat transfer indicators, ventilation factors, relative degree of fire destruction and relative physical evidence was utilized to establish the area of origin.

- During the general scene assessment, clothing, furniture, appliances and other personal contents typically found in an occupied motel room were noted.

- All typical appliances were found connected to various electrical outlets and/or other power sources with no unusual findings and/or observations.

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |

Fire Origin & Cause Investigation
The Toccoa Inn & Suites, Toccoa, GA
GC File No.: GC201402022
April 14, 2014

Page 4 of 23

An evaluation was made concerning the electrical system in the room of origin, which included all outlets, receptacles and branch circuit wiring.  This evaluation provided the following information:

- The north wall consisted of one wall outlet and one wall switch.

- The south wall consisted of one fire damaged wall outlet and one wall switch.

- The east wall consisted of two wall outlets.

- The west wall consisted of three wall outlets.

- The ceiling space did not consisted of any electrical apparatus.

- All fixed wiring in the room of origin failed to produce any evidence of arcing or other unusual electrical activity in any fashion.

The area of origin, or more specifically, the interior south wall, was examined by working from the top layer of debris to the final layer of debris until the floor was uncovered and inspected.  Clearing the area of origin of debris can be seen in the photo study provided within this report.  During the debris excavation process, the following conclusions and observations were made:

- No unusual burn patterns were observed.

- No debris samples were recovered from the area of origin for hydrocarbon analysis due to the fact that no physical evidence was discovered which would indicate a potential incendiary fire.

- All appliances and/or other possible ignition sources discovered in the area of origin displayed evidence consistent with that of simply being attacked by an advancing fire with the exception of the wall mounted HVAC appliance and associated wall outlet.

- All other items were successfully eliminated as contributing factors surrounding this loss.

- The fire damage increased with proximity to the wall outlet and the male plug of the HVAC appliance power cord and was subsequently considered the epi-center of this thermal event.

- The HVAC appliance was mounted in the south wall of the room and the associated power cord was found inserted in the wall outlet located directly beneath the appliance.

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |
| --- | --- | --- |

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 5 of 23

- The wall outlet was examined and found to have electrical components of the HVAC plug still inserted.  The blade(s) displayed damage consistent with resistance heating.

- The HVAC unit is described as a white in color appliance and was manufactured by Carrier. The model number and serial number were destroyed during the fire.

- The control components were likewise destroyed during the fire.

- Examination of the power cord revealed resistance heating on the male-end of the plug.

- Reconstruction of the area of origin confirmed the above findings and conclusions.

- Through a process of careful analysis and examination, all accidental causes and available ignition sources inherent to the structure were eliminated during the course of the fire scene inspection.

- During the debris sifting process, no unusual evidence was discovered other than the item(s) mentioned above.

- The final hypothesis was concluded only after all known evidence and facts were examined and eliminated through deductive reasoning and careful examination and consideration.

<u>**Investigation Methods**</u>

- The investigation method(s) and/or Procedure(s) utilized during the course of this investigation were conducted in accordance with NFPA 921, *Guide for Fire and Explosion Investigations 2011*, and NFPA 1033, *Standard for Professional Qualifications for Fire Investigator 2009*. The systematic approach used in the investigation was that of the scientific method as prescribed in NFPA 921, Chapter 4 Basic Methodology, and NFPA 1033, A.4.1.2.

- The scene was systematically examined, relevant data collected, key interviews conducted, the collected data analyzed, possible hypotheses were developed based on the data analysis, and the resulting hypotheses were tested through a process of deductive reasoning.

**Documents Reviewed**

As part of **Griswold Consulting's** assessment of the reported damage at the residence/property, we reviewed the following documents:

- *Toccoa Fire Department report.*

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |
|---|---|---|

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 6 of 23

## Final Conclusions

Based on the observations at the time of the site visit and subsequent investigation, the following are conclusions offered by the investigator. These conclusions are based on a systematic evaluation of physical and observable evidence as well as fire pattern analysis to a reasonable degree of investigative certainty.

- It was the opinion of the investigator that:

  o The fire originated in motel room 203.

  o The fire was attributed to resistance heating where the HVAC power cord was inserted into the wall outlet. The event was attributed to age and worn connections.

  o The inspection of an exemplar room revealed heat damage in the exact same type of plug and wall outlet configuration– suggesting that these appliances require immediate inspection for damage and/or age related issues.

  o There were no indications that the fire was initiated by human intervention.

  o During this inspection, it was immediately observed that the smoke detector in room 203 was missing from the ceiling mount. During the interview with Investigator Brian Smith, he reported that they located the detector in a dresser drawer where they suspect the room occupant may have removed and re-located it. Evidence of smoking was observed in this non-smoking room.

  o The injured occupant was identified as a female, Courtney Patton, who resides at 2484 West Currahee Street, Toccoa, GA.

  o An on-site interview with Mr. Kesliker revealed that there has been no recent work, repairs and/or modifications to motel room 203.

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 7 of 23

## Limits of Study

This report was prepared for the exclusive use of **IAT Specialty** and was not intended for any other purpose. This report represents the forensic observations and conclusions resulting from information that was provided to us as well as the fire scene findings. The site inspection(s) performed on the above date(s) was a limited visual assessment. Areas hidden from view such as within walls, floors, or otherwise not accessible, were not examined. The opinions in this report are based upon fire science and forensic observations made during the course of this investigation and were developed to a reasonable degree of investigative certainty. Please note that **Griswold Consulting, LLC** reserves the right to revise the observations, comments, and/or conclusions above as conditions change or additional information becomes available. This report was prepared for our client's use and **Griswold Consulting, LLC** disavows any liability for use by others.

**Griswold Consulting, LLC** appreciates this opportunity to have assisted you with this investigation. Please contact us if you have any questions or need additional information.

Sincerely,

Loren M. Griswold, CFI, CFEI, CVFI, CMI
Fire & Electrical Investigator
EPA Certified

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 8 of 23



1 – The overall view of the motel building containing room 203.



2 – The exterior view of room 203.

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 9 of 23



3 – The exterior view of room 203.



4 – The exterior view of the HVAC appliance for room 203.

FIRE INVESTIGATIONS     ELECTRICAL ANALYSIS     LITIGATION SUPPORT

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 10 of 23



5 – Carrier – identified as the manufacturer of the HVAC unit.



6 – An overall interior view of room 203 facing north.

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 11 of 23



7 – A view of the smoke detector ceiling mount as found upon arrival.



8 – A view of the smoke damaged plug for the smoke detector.

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 12 of 23



9 – The documentation of personal items as found upon arrival.



10 – The documentation of personal items as found in the room.

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 13 of 23



11 – Evidence of smoking materials as found upon arrival.



12 – An overall view of the area of origin facing south.

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 14 of 23



13 – A view of the wall mounted HVAC appliance as found upon arrival.



14 – The removal and inspection of the lamp cord and base.

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 15 of 23



**15** – The inspection of the lamp bulb and fixture base.



**16** – The top inspection of the HVAC appliance.

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 16 of 23



17 – The inspection of the HVAC control console.



18 – A view of the floor debris in front and under the HVAC appliance.

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 17 of 23



**19 –** The area of origin cleared of debris.



**20 –** The examination of the HVAC plug.

| FIRE INVESTIGATIONS | ELECTRICAL ANALYSIS | LITIGATION SUPPORT |

Fire Origin & Cause Investigation
The Toccoa Inn & Suites, Toccoa, GA
GC File No.: GC201402022
April 14, 2014

Page 18 of 23



21 – A view of the wall outlet located underneath the HVAC appliance.



22 – The examination of the appliance plug.

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 19 of 23



23 – Evidence of resistance heating discovered on the appliance plug.



24 – The inspection of the wall outlet.



25 – The inspection of resistance heating damage found on the plug blade left inserted in the wall outlet.



26 – The inspection of an exemplar plug in a adjacent motel room.

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 21 of 23



27 – Heat damage observed on the male plug of the HVAC appliance.



28 – The inspection of the heat damaged plug.

**Fire Origin & Cause Investigation**
**The Toccoa Inn & Suites, Toccoa, GA**
GC File No.: GC201402022
April 14, 2014

Page 22 of 23



29 – The inspection of the heat damaged wall outlet for the exemplar HVAC appliance.



30 – Heat damage found on the HVAC wall outlet.

# HEDRICK GARDNER

### HEDRICK GARDNER KINCHELOE & GAROFALO LLP
## ATTORNEYS AT LAW

CHARLOTTE • RALEIGH • WILMINGTON • COLUMBIA

April 17, 2015

M. Diane Owens
S. Deann Bomar
Swift, Curry, McGhee & Hiers, LLP
1355 Peachtree St. NE, Suite 300
Atlanta, GA 30309

**Reply To:**

**DAVID N. ALLEN**
Partner
P.O. Box 30397
Charlotte, NC 28230
Direct:  (704) 602-8015
Fax:      (704) 602-8115
Email:  dallen@hedrickgardner.com

RE:    **Courtney Desiree Patton v. Minchont, Inc. d/b/a Toccoa Inn & Suites, Mingledorff's, Inc., and Carrier Corporation**
Case No.:    **14-SU-CV-329cc (Superior Court, Stephens County)**

Dear Ms. Owens and Ms. Bomar:

My firm and I have been retained as counsel for Technology Research Corporation ("TRC") in regards to the above-captioned matter.  I have received copies of your February 12, 2015 Notice of Non-Party Fault as well as your March 27, 2015 Tender of Defense and Demand for Indemnification Letter, sent on behalf of Carrier Corporation ("Carrier").  Please accept this as a response to the March 27, 2015 tender letter.

TRC hereby rejects Carrier's tender of defense and demand for indemnification.  The primary reason for this rejection is the lack of evidence that the LCDI cord incorporated into the subject Carrier Model 52C unit was manufactured by TRC.  Your tender letter states that Carrier has been able to identify through photographs provided by representatives of the Toccoa Inn that the subject cord was manufactured by TRC.  TRC is not convinced based on this conclusory statement.  If Carrier has any information to show that the subject cord was in fact manufactured by TRC, as opposed to other vendors who supplied similar cords to Carrier, please provide me with such information.  We understand that the subject unit has been discarded and is no longer available for inspection, so further efforts to identify the manufacturer of the subject cord are limited.   Unless convincing evidence is presented showing that the subject cord was manufactured by TRC, TRC has no obligation to accept Carrier's tender of defense and demand for indemnification.

Further, your tender letter states that "it is evident that the Plaintiff's theory of recover in this case is necessarily based on an alleged defect in the LCDI cord that was attached to the subject PTAC unit."  TRC disagrees.  Plaintiff's Complaint makes not a single reference to the LCDI cord.  Instead, the Complaint simply alleges that "the fire originated in the room's window air conditioning/heating unit, which was designed and manufactured by Carrier."  (Complaint ¶

April 17, 2015
Page 2

13).  The Complaint then notes that "[t]he window air conditioning/heating unit…is subject to a recall related to its propensity to catch fire due to one or more defects in the unit."  (Complaint ¶ 14).  TRC's understanding is that the Complaint refers to a November 2007 recall of Carrier Model 52C units.  Upon information and belief, such recall pertained to a defect to internal elements of the Model 52C units and had absolutely no relation to the units' LCDI cords.  If Carrier possesses any information to the contrary, please provide it to me at your earliest convenience.

In summary, absent evidence that the subject LCDI cord was manufactured by TRC and given the ambivalence regarding the Plaintiff's theory of product defect, TRC has no obligation, contractual or otherwise, to accept Carrier's tender of defense and demand for indemnification.

Please feel free to reach out to me if you would like to discuss this matter in more detail.

Very Sincerely,

David N. Allen