# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| **CARRIER CORPORATION,** <br><br> Plaintiff, <br><br> v. <br><br> **TECHNOLOGY RESEARCH, LLC, F/K/A TECHNOLOGY RESEARCH CORPORATION,** <br><br> Defendant. <br><br> _____/ <br><br> **TECHNOLOGY RESEARCH, LLC, F/K/A TECHNOLOGY RESEARCH CORPORATION,** <br><br> Conditional Counterclaimant, <br><br> v. <br><br> **CARRIER CORPORATION,** <br><br> Conditional Counterdefendant. | **CASE NO.:** <br> **8:21-cv-00008-VMC-AAS** |

### DEFENDANT/COUNTERCLAIMANT'S
### DAUBERT MOTION TO EXCLUDE RICHARD A. BLANCHARD
### AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Defendant/Counterclaimant Technology Research, LLC ("TRC") and respectfully shows as follows:

1

# INTRODUCTION

Dr. Blanchard opines the design of TRC's 37190 and 37190 MMV cord sets are defective because the metal oxide varistors ("MOVs") within the cord sets do not include thermal fuses or "similar devices." However, Dr. Blanchard has failed to test this hypothesis and is unaware of any testing substantiating his theory. Dr. Blanchard's hypothesis has not been subjected to peer review or publication. Moreover, the hypothesis is unrelated to the central issue in this matter – the cause of the fire in Room 203 of the Toccoa Inn – as Carrier has produced no evidence that any alleged defect in TRC's cord set caused the subject fire. Accordingly, Dr. Blanchard's testimony should be excluded under Rule 702 of the Federal Rules of Evidence.

# ARGUMENT AND CITATION TO AUTHORITY

To be admitted as an expert and offer opinion testimony to a jury, a proposed expert must first pass "a rigorous thee-part inquiry". See Camacho v. Nationwide Mut. Ins. Co., 13 F. Supp. 3d 1343, 1365 (N.D. Ga. 2014).

> Under Federal Rule of Evidence 702, expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue.

Chapman v. Procter & Gamble Distrib., LLC, 766 F.3d 1296, 1304 (11th Cir. 2014). The proponent of expert testimony has the burden with respect to each of these three requirements. See Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999) ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.").

I.   **DR. BLANCHARD'S METHODOLOGY IS NOT RELIABLE.**

"Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) **tested**." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593 (1993) (Emphasis added). "Another pertinent consideration is whether the theory or technique has been subjected to **peer review and publication**." Id. (Emphasis added).

1. **Dr. Blanchard has not Tested His Hypothesis.**

The Supreme Court in Daubert noted that "[s]cientific methodology today is based on **generating hypotheses and testing them** to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593 (1993) (emphasis added). Accordingly, "whether [an expert's] theory or conclusion can be and has been tested … has been described as the 'most significant Daubert factor'".

3

Garcia v. BRK Brands, Inc., 266 F. Supp. 2d 566, 574 (S.D. Tex. 2003) (quoting Cummins v. Lyle Industries, 93 F.3d 362, 368 (7th Cir. 1996)). Numerous cases have held that the failure to subject a proffered opinion to scientific testing justifies exclusion. See, e.g., Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000) (product-liability expert's failure to test his theories warranted exclusion); Pride v. BIC Corp., 218 F.3d 566, 577 78 (6th Cir. 2000) (manufacturing defect opinion properly excluded where experts failed to timely conduct reliable testing or validate theory by reference to generally accepted scientific principles); Coffey v. Dowley Mfg., Inc., 187 F. Supp. 2d 958, 977 (M.D. Tenn. 2002) ("failure to physically test [the allegedly defective product] render[ed] [proposed expert's] application of the principles and methods to the facts of the actual accident unreliable"), aff'd, 89 F. App'x 927 (6th Cir. 2003); Lord v. Fairway Elec. Corp., 223 F. Supp. 2d 1270, 1283 (M.D. Fla. 2002) (excluding expert, noting "the court is troubled by the fact that [the expert] did not conduct tests or provide standards or literature to support his theory").

    Here, Dr. Blanchard opines the design of TRC's 37190 and 37190 MMV cord sets[1] are defective because the MOVs within the plugs do not include thermal fuses

---

[1] Carrier contends the subject PTAC unit incorporated a cord set manufactured by TRC. Carrier's experts – including Dr. Blanchard – have produced no evidence establishing the identity of the cord set. Rather, Dr. Blanchard under the assumption that the cord set in question is either a TRC 37190 or 37190 MMV cord set. [Doc. # 1-2, pg. 8; Doc. # 22-1, ¶ 10; Blanchard Depo.: 41: 21-43:11].

4

or "similar devices." [Doc. # 76-1, pg. 11-12, Deposition of Richard Blanchard, 10:6-11, 95:10-15, 96:17-98:3; 135:15-19, attached hereto as Ex. 1]. An MOV is a device designed to protect electrical circuits and devices from high voltage spikes. [Blanchard Depo.: 77:11-78:1]. Dr. Blanchard hypothesizes that the lack of a thermal fuse or similar device can cause a MOV to fail over time, which in turn, can lead to thermal damage of the cord set and electrical fires. [Doc. # 76-1, pg. 11-12, Blanchard Depo.: 95:10-16, 96:17-99:8].

However, this hypothesis remains untested and unsupported by the evidence. [Blanchard Depo.: 11:2-5; 98:4-9, 135: 10-19, 144:21-145:9]. **Dr. Blanchard has not tested his hypothesis, nor is he aware of any relative testing performed by an outside party**. [Blanchard Depo.: 11:2-5; 98:4-9, 144:21-145:9]. Dr. Blanchard had access to exemplar TRC cord sets and explained two possible methods by which his theory could be tested. [Blanchard Depo.: 43:12-15, 98:4-99:8]. Nevertheless, no testing was performed. [Blanchard Depo.: 11:2-5; 98:4-9, 135: 10-19, 144:21-145:9].

Incredibly, Dr. Blanchard is unaware of **any** evidence that **any** TRC 37190 or 37190 MMV cord set sustained thermal damage or fire due to the alleged failure of a MOV. [Blanchard Depo.: 135:5-9]. In fact, Plaintiffs' other expert, Mr. Lindsey, was provided approximately 150 returned cord sets and did not find a single cord set that he believes suffered a thermal failure due to a MOV. [Deposition of Jeffrey

5

Lindsey, 97:23-98:10, 147:7-13, attached hereto as Ex. 2]. In fact, Mr. Lindsey investigated the design of the 37190 and is not alleging that the MOV or the lack of a thermal fuse connected to a MOV is a defect. [Lindsey Depo., 147:3-6]

Dr. Blanchard opines "the addition of a single component such as a thermal fuse or similar device for each MOV" would prevent any thermal damage to TRC's cord sets and potential fires. [Doc. # 76-1, pg. 12; Blanchard Depo.: 135:10-19]. Again, Dr. Blanchard **failed to present or perform any testing substantiating his hypothesis that an alternative design would "fix" anything**. [Blanchard Depo.: 11:2-5; 98:4-9, 135: 10-19, 144:21-145:9].

Dr. Blanchard's MOV hypothesis is wholly untested, therefore his methodology fails under Rule 702 of the Federal Rules of Evidence.

**2. Dr. Blanchard's Hypothesis Has Not Been Subjected to Peer Review.**

A lack of review and support by the relevant authorities is fatal to any novel theory sought to be imposed in litigation. McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1255 (11th Cir. 2005) (reversing admission of experts where "[t]he medical literature does not support [their] opinions" and the "experts took leaps of faith and substituted their own *ipse dixit* for scientific proof on essential points"); cf. Sexton By & Through Sexton, 926 F.2d at 337 (vacating plaintiff's judgment and holding that proposed testimony should not have been allowed to reach the jury where, among other flaws, "[n]o literature was presented to indicate that anyone—industry,

government, or consumers—recognized a need for greater protection . . . than that provided for by these [existing] standards.").

Dr. Blanchard was unable to cite to any peer reviews or publications adopting his theory that a thermal fuse or similar device must be incorporated when using a MOV. [Blanchard Depo.: 137:10-14; 141:13-142:1]. In contrast, the design of TRC's 37190 and 37190 MMV cord sets were certified by Underwriter Laboratories and their safety approved by the Consumer Product Safety Commission, an independent agency of the United States government. [Blanchard Depo.: 137:15-141:11].

Dr. Blanchard cites to three field studies performed by different engineering firms to support his defect theories. [Doc. # 76-1, pg. 12]. Dr. Blanchard's report contends each study identified MOV failure as the most likely cause of incidents involving thermal damage to a TRC cord set and/or fire. [Doc. # 76-1, pg. 12].

However, at deposition Dr. Blanchard was forced to admit that these three engineering reports did not conclude what he claimed in his report. Dr. Blanchard admitted that **none** of the field studies concluded MOV failure to be the cause of the thermal events/fires investigated. [Blanchard Depo.: 128:12-129:12]. Dr. Blanchard admitted his alleged defect hypothesis was **not** stated as a cause in any of the investigations. [Blanchard Depo.: 129:15-18]. It is unclear whether the cord sets

examined in these three field studies cited were even TRC 37190 or 37190 MMV cord sets. [Blanchard Depo.: 102:17-21, 107:20-109:16,122:14-16].

Dr. Blanchard's MOV hypothesis fails because it has not been subjected to peer review or publication. Accordingly, Dr. Blanchard's expert testimony should be excluded.

**II.  DR. BLANCHARD'S HYPOTHESIS IS NOT RELATED TO THE CAUSE OF THE FIRE, THUS SHOULD BE EXCLUDED AS UNHELPFUL TO THE JURY.**

Expert testimony also does not help the trier of fact if it fails to "fit" with the facts of the case. McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004). This occurs when "a large analytical leap must be made between the facts and the opinion." Id. The court may exclude otherwise reliable testimony if it does not have "sufficient bearing on the issue at hand." Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1121 (10th Cir. 2004).

Dr. Blanchard's MOV hypothesis is irrelevant to the central issue in this case- the cause of the fire in Room 203 of the Toccoa Inn. Dr. Blanchard admits he does not opine that his MOV hypothesis was the **cause** of the subject fire. [Blanchard Depo.: 94:25-95:15, 160:24-161:1]. Dr. Blanchard admits he has no opinions regarding the origin and cause of the subject fire and testified that he does not know the most likely cause of the fire. Id. Carrier's only other expert, Mr. Lindsey, similarly testified that he had no opinions as to the cause-and-origin of the subject

fire. [Lindsey Depo.: 146:6-18; 149:1-7; 156:9-157:13]. For this additional reason, Dr. Blanchard's MOV hypothesis should be excluded.

## CONCLUSION

For the reasons stated herein, TRC respectfully requests that this Court grant its Motion and exclude Dr. Blanchard from testifying at trial.

## RULE. 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g) Local Rules, United States District Court of the Middle District of Florida, the undersigned counsel certifies that he has (1) conferred with opposing counsel by way of email and (2) opposing counsel has not agreed to this Motion.

This 12th day of October, 2021.

        WATSON SPENCE, LLP

        */s/ Michael R. Boorman*
        Michael R. Boorman
        *Admitted pro hac vice*
        mboorman@watsonspence.com
        Evan E. Smith, IV
        *Admitted pro hac vice*
        esmith@watsonspence.com
        999 Peachtree Street NE
        Suite 1130
        Atlanta, Georgia 30309
        Telephone: (229) 436-1545
        Facsimile: (678) 331-7070

        Christopher A. Cazin
        Florida Bar No. 43515
        ccazin@wickersmith.com

>Michael E. Reed
>Florida Bar No. 961760
>mreed@wickersmith.com
>WICKER SMITH O'HARA MCCOY & FORD, P.A.
>100 N. Tampa Street
>Suite 1800
>Tampa, Florida 33602
>Telephone: (813) 222-3939
>Facsimile: (813) 222-3938
>
>*COUNSEL FOR DEFENDANT*
>*TECHNOLOGY RESEARCH, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify I have served a copy of the within and foregoing upon all counsel of record and the Clerk of the Court via electronic filing using the CM/ECF system, to wit:

R. Ryan Rivas
HALL BOOTH SMITH, P.C.
2701 North Rocky Point Drive, Suite 400
Tampa, Florida 33607
rrivas@hallboothsmith.com
*Attorney for Plaintiff*

Kevin T. Kucharz
HALL BOOTH SMITH, P.C.
191 Peachtree Street, N.E., Suite 2900
Atlanta, Georgia 30303
kkucharz@hallboothsmith.com
*Attorney for Plaintiff*

This 12th day of October, 2021.

            /s/ *Michael R. Boorman*
            Michael R. Boorman
            *Admitted pro hac vice*