UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CARRIER CORP.,**

    **Plaintiff,**

v.                                                        **Case No. 8:21-cv-08-VMC-AAS**

**TECHNOLOGY RESEARCH, LLC,**
**F/K/A TECHNOLOGY RESEARCH**
**CORP.,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Defendant Technology Research, LLC (TRC) requests Rule 11 sanctions. (Doc. 108). Plaintiff Carrier Corporation (Carrier) opposes this motion. (Doc. 110). It is **RECOMMENDED** that TRC's Motion for Sanctions (Doc. 108) be **DENIED**.

**I. BACKGROUND**

On February 2, 2014, a fire in a Georgia motel room injured the room's occupant, Courtney Patton. (Doc. 1, Ex. 2, ¶ 9–21). Ms. Patton sued Carrier in Georgia state court, and alleged the fire originated from a defective Carrier air conditioning unit inside the motel room. (*Id.*). Carrier filed a third-party complaint in the Georgia case in July 2015 against TRC based on allegations that the fire was caused by a defective TRC component of Carrier's air conditioning unit. (Doc. 22, Ex. 1, 2). Carrier settled its underlying lawsuit in

1

the Georgia case with Ms. Patton and maintained its third-party complaint against TRC. (*Id*. at Ex. 2, p. 11–16).

The parties disagree over how much discovery was conducted in the Georgia case. *See* (Doc. 67, p. 2–3) (noting the parties' competing claims as to how much discovery was conducted). Carrier voluntarily dismissed the third-party complaint in the Georgia case without prejudice on November 6, 2020. (Doc. 22, Ex. 6, 8). On November 20, 2020, Carrier filed the underlying Florida state court action and alleged contractual indemnity (Count I) and common law indemnity (Count II). (Doc. 1). TRC removed the instant action and filed its answer and conditional counterclaim on January 4, 2021. (Doc. 2).

TRC, two days after the parties jointly filed their case management report and before the court entered its case management and scheduling order, moved for summary judgment. (Doc. 22). The court denied TRC's motion for summary judgment on May 6, 2021, because the court concluded the "substantial discovery issues pending, including issues relating to the cause of the fire" rendered the motion premature. (Doc. 67, p. 9).

TRC now moves for Rule 11 sanctions against Carrier. (Doc. 108). TRC claims Carrier in its response to TRC's motion for summary judgment (Doc. 38) misrepresented to the court its intent to discover and provide causation evidence related to the actual origin of the fire. (*Id*. at 13). TRC further claims Carrier "pushed for. . . extremely costly [electronically-stored information]. . .

2

contended the ESI addressed the ultimate issue in this matter – i.e., the origin-and-cause of the subject fire – then failed to have its experts even review the ESI." (*Id.* at 14). TRC therefore requests attorney's fees since Carrier filed its allegedly sanctionable response to TRC's summary judgment (Doc. 38) and reimbursement of all ESI-related costs. (Doc. 108, p. 15).

Carrier responds that TRC's contentions regarding causation evidence are irrelevant because the applicable law to this dispute does not require proof of negligence. (Doc. 110. p. 2). Carrier further argues that any statements it made about its intent to provide causation evidence cannot be sanctionable because of "the unique factual circumstances surrounding TRC's summary judgment motion;" mainly, that "TRC's summary judgment motion was filed before the court [] entered its case management order and months before the production" of any discovery. (Doc. 110, p. 2) (emphasis removed). Carrier finally contends its ESI collection from TRC caused no harassment or unnecessary delay, instead claiming Carrier "sought the discovery to which it was legally entitled in this litigation and made representations to the Court based on the best knowledge available at the time of its response to TRC's premature summary judgment motion." (Doc. 110, p. 3) (emphasis removed).

## II.  LEGAL STANDARD

Under Rule 11, an attorney or unrepresented party who submits a pleading, motion, or other paper certifies "to the best of the person's knowledge,

3

information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Fed. R. Civ. P. 11(b).

"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). However, Rule 11 does not apply to discovery-related motions or filings. Fed. R. Civ. P. 11(d); *see also Weaver v. Matter and Harbert, P.A.*, 523 F. App'x 565, 568 (11th Cir. 2013).

Twenty-one days before filing a Rule 11 sanctions motion with the court, the movant must serve a copy of the motion to the opposing party to allow the party to withdraw or correct "the challenged paper, claim, defense, contention, or denial." Fed. R. Civ. P. 11(c)(2). "This 'safe harbor' provision is intended to emphasize the seriousness of the motion for sanctions and define precisely the

4

conduct allegedly in violation of the Rule." *Hooker v. Wilkie*, No. 8:18-cv-2000-CEH-JSS, 2019 WL 6842083, at *1 (M.D. Fla. Dec. 16, 2019) (citing Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment)). A movant's failure to satisfy this twenty-one-day safe harbor provision "forecloses Rule 11 sanctions." *Marcort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006); *see also Espanol v. Avis Budget Car Rental, LLC*, No. 8:10-cv-944-MSS-AEP, 2012 WL 12904800, at *1 (M.D. Fla. Nov. 9, 2012) (collecting cases in which the court often denies motions for sanctions for failure to comply with the safe harbor provision).

"The standard for testing conduct under. . . Rule 11 is 'reasonableness under the circumstances.'" *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (citations omitted). Courts apply a "two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleading should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (citations omitted). Rule 11 sanctions should be imposed "when a party files a pleading that (1) has no reasonable factual basis; (2) is based on legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Id.*

## III. ANALYSIS

This report will first examine TRC's claims of intentional misrepresentation, then turn to TRC's claims of harassment and unnecessary delay.

### A. Intentional Misrepresentation

TRC claims Carrier intentionally misrepresented its intent to acquire and present causation evidence. TRC points out that at multiple points in Carrier's response to TRC's motion for summary judgment (Doc. 38), Carrier stated its intent to present causation evidence and a causation expert. (Doc. 108, p. 11–12) (*citing* Doc. 38, p. 14, 20; Ex. 5, ¶ 7). TRC claims "Carrier has produced no causation evidence whatsoever," and the two experts Carrier has produced have "no opinions as to the origin or the cause of the fire," were not "able to testify as to the most likely cause of the fire," and were not asked by Carrier to investigate the origin and cause of the fire. (Doc. 108, p. 12–13) (internal citations omitted).

Carrier responds that New York state law governs the indemnification provision of the contract at center in this dispute and proof of negligence under New York law is unnecessary to establish an enforceable contractual indemnity provision. (Doc. 108, p. 13–14). Carrier argues it need only show Ms. Patton's claims complied with the indemnification provision of the contract itself, that her claims were "incident to" or "growing out of" TRC's negligence

6

or product defect. (*Id.* at p. 14). Carrier further specifies it has made no "misrepresentations about its intent to present causation evidence" that Ms. Patton's claims were incident to or growing out of TRC's negligence or product defect. (*Id.*). Carrier also argues its conduct should be evaluated "without the 'wisdom of hindsight,'" as its response to TRC's motion for summary judgment was filed "months before any discovery was taken." (*Id.* at 14) (*citing Royal Palm Village Residents, Inc. v. Slider*, No. 8:19-cv-874-CEH-SPF, 2021 WL 4190958, at *3 (M.D. Fla. Sept. 15, 2021)).

The court entered its Case Management and Scheduling Order eight days before Carrier filed its response to TRC's motion for summary judgment. *See* (Doc. 30, 38). This federal litigation had just begun. Moreover, "Carrier was unable to conduct a substantial portion of the discovery it hoped to" in the Georgia case, in part because "several of its discovery requests. . . were allegedly not sufficiently responded to." (Doc. 67, p. 9) (*citing* (Doc. 41, Ex. 10)). Thus, the limited amount of documentary evidence Carrier possessed at the time it filed its response to TRC's motion for summary judgment meant "Carrier's discovery plan and the representations made early on in this case were based upon expectations related to" ESI TRC produced only after Carrier filed its response to TRC's motion for summary judgment. (Doc. 110, p. 10).

At best, TRC demonstrates Carrier has veered its litigation strategy since the filing of its response to TRC's motion for summary judgment away

7

from proving TRC's defective product caused the fire in Ms. Patton's motel room and towards arguing such proof is unnecessary to establishing its contractual indemnity claim. This shift is not unreasonable considering the limited discovery available at the time Carrier filed its response to TRC's motion for summary judgment. TRC has not established Carrier's conduct was frivolous or made in bad faith at the time Carrier filed its response to TRC's motion for summary judgment.

### B. Harassment and Unnecessary Delay

The ESI referenced in TRC's sanctions motion is over 550 gigabytes of ESI TRC objected to producing during litigation for the Georgia case. (Doc. 110, p. 16). The court's prior order denying TRC's motion for summary judgment noted this ESI as an example of the substantial outstanding discovery that rendered TRC's motion premature. (Doc. 67, p. 8). Though TRC objected to the production of much of this ESI in the Georgia case, it appears the parties successfully conferred and established parameters for the production of the ESI in this matter. (Doc. 108, ¶ 29). Carrier asserts "after several Discovery status hearings and years since its representation about the size of the potentially inculpatory data set, TRC informed the Court and Carrier for the first time that 500 GBs of the data was possibly duplicative and much smaller amount of ESI was potentially actually relevant to this case." (Doc. 110, p. 9). Carrier claims "only approximately 50 gigabytes (less than 10% of the original

8

amount) of the ESI was relevant to this case." (*Id*. at 16).

TRC claims Carrier sought the production of this ESI "without any intent to review the evidence." (Doc. 108, p. 14). TRC claims Carrier "produced no evidence that [its two experts] even reviewed the extremely costly ESI previously demanded by Carrier," as "[n]either expert references the ESI in its expert report" and one such expert "expressly denied reviewing the ESI during his deposition." (*Id*.). TRC finds this "particularly disturbing" given Carrier's prior statements that this ESI was "directly at issue in this action." (*Id*.) (citing (Doc. 38, p. 12–13)). TRC therefore argues Carrier's requests for this specific set of ESI was "clearly made for the improper purpose of harassing TRC, causing an unnecessary delay," and needless increasing the cost of litigation. (Doc. 108, p. 15).

Carrier responds that it spent "more than 200 attorney hours to obtain, review, and analyze the ESI TRC produced in this case, without even considering the hundreds of additional attorney hours and tens of thousands of dollars spent preparing its own ESI for production to TRC." (*Id*. at 18). Carrier claims its experts did not use the produced ESI because the ESI was not relevant to the experts' limited testimony on their opinions of the design and manufacturing of the TRC product at issue. (*Id*. at 16, 20). Carrier contends "[i]t would be antithetical to the discovery regime under the Federal Rules of Civil Procedure if courts punished parties whenever the discovery they

9

sought did not ultimately result in uncovering specific necessary evidence in the eyes of their opponent." (*Id.*).

The undersigned held multiple discovery conferences in this matter and addressed how the parties would exchange ESI. *See* (Docs. 43, 50, 54). Though TRC appears to claim Carrier misrepresented its intent in pursuing the ESI at the discovery conferences, TRC's support for this argument rests on the fact that Carrier's *experts* did not review the ESI. (Doc. 108, p. 14). TRC provides no case law supporting this basis for granting sanctions and the undersigned has not independently found any.

Further, Carrier did not misrepresent its purpose in requesting the ESI. Carrier at no point affirms the ESI is entirely irrelevant to its claims. To the contrary, Carrier alludes to the ESI being relevant to "TRC's awareness of the design or manufacturing defect(s), the timing of TRC's awareness of the defect(s), TRC's awareness of other similar incidents to the Patton fire, or whether TRC employees were aware of the design and/or manufacturing defect(s) before or after the Patton fire." (Doc. 110, p. 19). This claim tracks with Carrier's statements in its response to TRC's motion for summary judgment. *See* (Doc. 38, p. 13) (alleging discovery of the ESI was necessary to locate information regarding "other similar incidents ("OSI") involving TRC's LCDI overheating, resistance heating, scorching, charring, igniting, burning or melting—conditions which are denied by TRC and are directly at issue in

this action"). Carrier did not harass TRC or unnecessarily delay proceedings with its pursuit of TRC's ESI.

## IV. CONCLUSION

On this record, Rule 11 sanctions are not warranted. It is therefore **RECOMMENDED** that TRC's Motion for Rule 11 Sanctions (Doc. 108) is **DENIED.**

**ENTERED** in Tampa, Florida, on February 2, 2022.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## **NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.